**Hearing Date and Time: TBD**
**Objection Deadline: TBD**

**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Robert B. Krakow (admitted *pro hac vice*)
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900

*Attorneys for PricewaterhouseCoopers AG, Zurich,*
*as Bankruptcy Liquidator of*
*Lehman Brothers Finance AG, in Liquidation,*
*a/k/a Lehman Brothers Finance SA, in Liquidation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X
                                                                    :
In re:                                                              :      **Chapter 11**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                        :      **Case No. 08-13555 (SCC)**
                                                                    :
                                        Debtors.                    :      **Jointly Administered**
                                                                    :
                                                                    :
------------------------------------------------------------------ X
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,**                                  :
                                                                    :
                                        Plaintiff,                  :
                                                                    :
v.                                                                  :      **Adv. Proc. No. 13-01431 (SCC)**
                                                                    :
**DR HC TSCHIRA BETEILIGUNGS GMBH & CO**                            :
**KG, and KLAUS TSCHIRA STIFTUNG GGMBH,**                           :
                                                                    :
                                        Defendants.                 :
------------------------------------------------------------------ X

## LEHMAN BROTHERS FINANCE AG'S MOTION TO QUASH
## AND/OR FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................. 1

II.   BACKGROUND RELATING TO THE LBF/TSCHIRA DISPUTE ............................. 1

      A.    Lehman Brothers Finance AG, a/k/a Lehman Brothers Finance SA ................... 2

      B.    LBF's Swiss Bankruptcy Proceedings and Chapter 15 Filing ............................. 2

      C.    The LBF/Tschira Transactions ................................................. 3

      D.    The LBF/Tschira Litigation ................................................. 4

      E.    The LBHI/Tschira Litigation ................................................. 5

III.  RELIEF REQUESTED ................................................. 5

IV.   BASIS FOR RELIEF REQUESTED ................................................. 5

      A.    Service of the Subpoena Was Improper Under the Federal Rules of Civil
            Procedure ................................................. 5

      B.    The Discovery Requests Must Be Made In Accordance With the Hague
            Evidence Convention ................................................. 8

            i.    Enforcement of the Subpoena Would Undermine Important
                  National Interests of Switzerland ................................................. 11

            ii.   The Other Comity Factors Support Quashing the Subpoena ................. 14

                  a.    The Requested Documents Are Largely Available By Other
                        Means And/Or Are of Limited Relevance to the Adversary
                        Proceeding ................................................. 14

                  b.    The Requests Lack Specificity ................................................. 16

                  c.    The Requested Documents Originated Outside of the
                        United States and Are Presently Located in Switzerland ........... 17

                  d.    LBF Will Suffer Hardship In the Form of An Unfair
                        Litigation Disadvantage If It Is Required to Respond to the
                        Subpoena ................................................. 17

                  e.    LBF is Proceeding in Good Faith ................................................. 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### Cases

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
   262 F.R.D. 293 (S.D.N.Y. 2009) .................................................................. 6

*British Int'l Ins. Co. v. Seguros La Republica, S.A.*,
   2000 U.S. Dist. LEXIS 7509, 2000 WL 713057 (S.D.N.Y. June 1, 2000) ....................... 18

*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*,
   2013 U.S. Dist. LEXIS 85650, 2013 WL 2661037
   (S.D.N.Y. June 11, 2013) ................................................... 15, 17, 18, 19, 21, 22

*Cohen v. City of New York*,
   255 F.R.D. 110 (S.D.N.Y. 2008) .................................................................. 18

*Cornfeld v. Investors Overseas Servs., Ltd.*,
   471 F. Supp. 1255 (S.D.N.Y.),
   *aff'd*, 614 F.2d 1286 (2d Cir. 1979) .............................................................. 14

*Cunard S.S. Co., Ltd. v. Salen Reefer Services AB*,
   773 F.2d 452 (2d Cir. 1985) ...................................................................... 13

*Derso v. Volkswagen of Am., Inc.*,
   159 A.D.2d 937, 552 N.Y.S.2d 1001, (N.Y. App. Div. 4th Dep't 1990) ........................... 7

*Gap, Inc. v. Stone Int'l Trading*,
   1994 U.S. Dist. LEXIS 1097, 1994 WL 38651 (S.D.N.Y. Feb. 4, 1994) ......................... 11

*Gibbs v. Hawaiian Eugenia Corp.*,
   581 F. Supp. 1269 (S.D.N.Y. 1984) ............................................................... 8

*Gucci America, Inc. v. Curveal Fashion*,
   2010 U.S. Dist. LEXIS 20834, 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ............... 20, 21

*Haber v. ASN 50th Street, LLC*,
   272 F.R.D. 377 (S.D.N.Y. 2011) .................................................................. 9

*IIT v. Lam* (*In re Colorado Corp.*),
   531 F.2d 463 (10th Cir. 1976) ................................................................... 13

*Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*,
   476 F. Supp. 119 (S.D.N.Y. 1979) ................................................................ 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ............................................................................. 10

*J. & L. Parking Corp., Inc. v. United States*,
   834 F. Supp. 99 (S.D.N.Y. 1993)
   *aff'd* 23 F.3d 397 (2d Cir. 1994) ................................................................. 8

### TABLE OF AUTHORITIES *(continued)*

**Page**

*Kenner Prods. Co. v. Société Foncière et Financiere Agache-Willot,*
    532 F. Supp. 478 (S.D.N.Y. 1982) ................................................. 14

*Laker Airways Limited v. Pan American World Airways,*
    607 F. Supp. 324 (S.D.N.Y. 1985) ................................................. 16

*Linde v. Arab Bank,*
    262 F.R.D. 136 (E.D.N.Y. 2009) ................................................. 21

*Madanes v. Madanes,*
    186 F.R.D. 279 (S.D.N.Y. 1999) ................................................. 12

*Metro-Godwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
    218 F.R.D. 423 (D. Del. 2003) ................................................. 16

*Milliken & Co. v. Bank of China,*
    758 F. Supp. 2d 238 (S.D.N.Y. 2010) ................................. 12, 18, 20, 22

*Minpeco, S.A. v. Conticommodity Servs., Inc.,*
    116 F.R.D. 517 (S.D.N.Y. 1987) ................................................. 17

*Nidec Corp. v. Victor Co. of Japan,*
    249 F.R.D. 575 (N.D. Cal. 2007) ................................................. 18

*Reino de Espana v. Am. Bureau of Shipping,*
    2005 U.S. Dist. LEXIS 15685, 2005 WL 1813017 (S.D.N.Y. 2005) ................ 13

*Richmark Corp. v. Timber Falling Consultants,*
    959 F.2d 1468 (9th Cir. 1992) ................................................. 20

*Sardanis v. Sumitomo Corp.,* 279 A.D.2d 225, 718 N.Y.S.2d 66 (N.Y. App. Div. 1st
    Dep't 2001) ................................................................... 7

*Société Nationale Industrielle Aérospatiale v. United States Dist. Court for S. Dist. of
    Iowa,*
    482 U.S. 522 (1987) ................................................. 11, 12

*Strauss v. Credit Lyonnais, S.A.,*
    249 F.R.D. 429 (E.D.N.Y. 2008) ................................................. 12

*Tiffany (NJ) LLC v. Forbse,*
    2012 U.S. Dist. LEXIS 72148, 2012 WL 1918866 (S.D.N.Y. May 23, 2012) ........ 18, 19

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,*
    825 F.2d 709 (2d Cir. 1987) ................................................. 13

### Statutes

11 U.S.C. §1517(b) ................................................................... 13

28 U.S.C. § 1781(b)(2) ................................................................... 10

N.Y. Bus. Corp. § 307 ................................................................... 6

**TABLE OF AUTHORITIES** *(continued)*

**Page**

**Rules**

Fed. R. Bankr. P. 7026 ................................................................................................ 5

Fed. R. Bankr. P. 9016 ................................................................................................ 5

Fed. R. Civ. P. 26 ....................................................................................................... 5

Fed. R. Civ. P. 4(f)(1) ................................................................................................. 7

Fed. R. Civ. P. 4(h)(1) ................................................................................................ 6

Fed. R. Civ. P. 4(h)(2) ................................................................................................ 7

Fed. R. Civ. P. 45 ................................................................................................. 5, 22

N.Y. C.P.L.R. § 2303(a) ............................................................................................. 6

N.Y. C.P.L.R. § 311 ................................................................................................... 6

**Other Authorities**

Article 271(1) of the Swiss Criminal Code ............................................................... 15

Department of State Circular on Judicial Assistance in Switzerland, *available at*
    http://bern.usembassy.gov/service_process.html (last visited February 10, 2014) ............ 19

Federal Supreme Court of Switzerland,
    Dec. 21, 2005, 132 DTF III 291 ................................................................... 20

Federal Supreme Court of Switzerland,
    Sept. 30, 1988, 114 DTF IV 128 .................................................................. 15

H.R. Rep. No. 109-31, pt. 1 (2005), reprinted in 2005 U.S.C.C.A.N. 88 ................... 13

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents,
    Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ........................................ 7

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
    Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ................................... 9, 10

Jones, *International Judicial Assistance: Procedural Chaos and a Program for Reform*,
    62 Yale L.J. 515 (1953) .............................................................................. 10

Swiss Declarations and Reservations to the Hague Evidence Convention on the Taking
    of Evidence Abroad in Civil or Commercial Matters, available at
    http://www.hcch.net/index_en.php?act=status.comment&csid=561&disp=resdn
    (last visited February 10, 2014) ..................................................................... 11

Switzerland Federal Department of Justice and Police,
    *International Judicial Assistance in Civil Matters: Guidelines* 27 (3d ed. 2013) ............... 20

PricewaterhouseCoopers AG, Zurich ("**PwC**"), in its capacity as duly authorized Bankruptcy Liquidator and foreign representative of Lehman Brothers Finance AG, in Liquidation, also known as Lehman Brothers Finance SA, in Liquidation, a Swiss corporation ("**LBF**"), hereby moves for an order quashing service of the Subpoena Duces Tecum dated January 27, 2014 and signed by counsel for Defendants (the "**Subpoena**")[1] and/or for a protective order, and respectfully states as follows:

## I.   PRELIMINARY STATEMENT

1.      Flaunting both U.S. and international law and procedure, Defendants have attempted to serve the Subpoena upon LBF by emailing and messengering it to LBF's U.S. counsel.  As shown below, even if it were permissible to serve the Subpoena directly upon LBF (which LBF believes is not proper because service must be made, as required by the Hague Service Convention, through the appropriate Swiss authorities), Defendants have not properly effected service merely by sending the Subpoena to LBF's U.S. counsel.  Moreover, since the discovery requested is governed by the Hague Evidence Convention, and not the Federal Rules, the discovery requests sought by the Subpoena must be submitted to the appropriate Swiss authorities, which determine what discovery, if any, is appropriate, and cannot effectively be directly served upon LBF.

## II.   BACKGROUND RELATING TO THE LBF/TSCHIRA DISPUTE

2.      The basic background facts pertaining to the chapter 11 cases are well known to the Court and will not be repeated here.

---

[1]  A copy of the Subpoena is annexed hereto as Exhibit A.

**A.**    **Lehman Brothers Finance AG, a/k/a Lehman Brothers Finance SA**

3.      LBF is a wholly-owned subsidiary of Lehman Brothers Holdings Inc. ("***LBHI***").

Prior to the commencement of the Swiss Bankruptcy (discussed below), LBF's primary business

was to engage in foreign (*i.e.*, non-U.S.) derivative transactions.

4.      LBF maintains its registered office in Zurich, Switzerland.  LBF has no offices or

employees in the United States.  While LBF has business relationships with several U.S.-based

Lehman Brothers entities and a number of other U.S. counterparties, the bulk of LBF's debtor-

creditor relationships involve entities that are not based in the United States, including Lehman

Brothers International (Europe) ("***LBIE***").

**B.**    **LBF's Swiss Bankruptcy Proceedings and Chapter 15 Filing**

5.      By order dated September 30, 2008, the Swiss Federal Banking Commission

(today the Swiss Financial Market Supervisory Authority, commonly referred to as FINMA) (the

"***Swiss Supervisory Authority***") assumed regulatory authority over LBF, as a financial

intermediary.  On December 19, 2008, the Swiss Supervisory Authority issued an order

commencing a Swiss "*Bankenkonkurs*," or bank/security dealer bankruptcy proceeding, effective

as of December 22, 2008 (the "***Swiss Bankruptcy***"), for LBF pursuant to Swiss law, and

appointing PwC as Bankruptcy Liquidator of LBF.

6.      This Court subsequently entered an *Order Granting Recognition of Foreign Main

Proceeding and Related Relief Under Chapter 15*, dated March 12, 2009 (Case No. 09-10583,

Docket No. 24) (the "***Chapter 15 Order***") that recognized the Swiss Bankruptcy as a "foreign

main proceeding," and PwC as the "foreign representative" of LBF under chapter 15 of the

Bankruptcy Code.

C.     **The LBF/Tschira Transactions**[2]

7.       In May 2007, LBF entered into similar variable forward transactions with Dr. HC Tschira Beteiligungs GmbH & Co KG and Klaus Tschira Stiftung GGmbH (together, the "***Tschira Entities***" or "***Tschira***" or "***Defendants***").  The purpose of the variable forward transactions was to hedge the Tschira Entities' exposure to fluctuations in the price of millions of shares in SAP AG (the "***SAP Shares***") that were held by the Tschira Entities.

8.       The variable forward transactions had a put feature that favored the Tschira Entities and a call feature that favored LBF.  If the market price of the SAP Shares fell below the floor price of €29.38,[3] the Tschira Entities had the right to put the SAP Shares to LBF for the floor price on the applicable settlement date.[4]  However, if the market price of the SAP Shares rose above the cap price of €55.70,[5] LBF had the call right to purchase the shares for the cap price on the applicable settlement date.  If the market price of the SAP Shares was in the band between the floor price and the cap price on the applicable settlement date, the transactions were to be settled by reference to the market price.

9.       In April 2008, LBF and the Tschira Entities entered into similar transactions that were essentially reversed (*i.e.*, LBF benefitted from the put and the Tschira Entities benefitted from the call).

---

[2]  The description set forth herein is a high-level summary only and omits many of the details and nuances of the transactions.  These are set forth in great detail in the Complaint and in the briefs that were submitted in connection with the Tschira Entities' Motion to Dismiss.

[3]  The floor price was 80% of the €36.725 initial price.

[4]  There were numerous settlement dates that were applicable to different tranches of SAP Shares.

[5]  The cap price was 151.65% of the initial price.

10.     As collateral for the transactions, the Tschira Entities pledged approximately 59 million SAP Shares to LBF and placed the pledged shares with LBIE to hold in custody.  LBHI executed guaranties securing LBF's obligations under the transactions.

11.     On September 12, 2008, LBF and the Tschira Entities agreed to amend certain of the transaction documents to require LBF to post an independent amount of €100 million with the Tschira Entities for the period of September 12, 2008 until September 18, 2008.  On that same date, €100 million was transferred to the Tschira Entities.

**D.     The LBF/Tschira Litigation**

12.     LBHI's September 15, 2008 bankruptcy filing gave rise to an event of default under the transactions and caused them to be terminated.  As such, the amount due under the transactions was to be calculated as of September 15, 2008.  LBF believes that it is owed in excess of €186 million plus interest by the Tschira Entities.  However, the Tschira Entities allege that the amount due under the transactions was properly calculated as of October 16, 2008 and claim that LBF owes them in excess of €511 million (excluding any allowance for the €100 million) pursuant to the transactions.

13.     On March 25, 2013, Tschira commenced an action for negative declaration against LBF in Switzerland, seeking a finding of the court that it did not owe to LBF.  On April 2, 2013, LBF filed suit against the Tschira Entities in the U.K. High Court of Justice, seeking the €186 million plus interest it is owed.  The Tschira Entities have raised the *lis pendens* defense in those proceedings, invoking their action for negative declaration in Switzerland.

14.     On April 3, 2013, LBF published its schedule of claims in the Swiss Bankruptcy, identifying in respect of each creditor who had filed a claim in the Bankruptcy, whether the claim was accepted and, if so, in what amount. The claims lodged by the Tschira Entities were rejected in their entirety.

4

15.     On April 22, 2013, the Tschira Entities filed objections to the rejection of their claims in the Swiss Bankruptcy (ANL3/51-109). The Tschira Entities also filed an administrative appeal in the Swiss Bankruptcy against FINMA's order approving the multi-billion dollar LBF-LBHI settlement that was also approved by this Court on April 25, 2013.  *See* Case No. 08-13555, Docket No. 36866.  The Swiss courts have exclusive jurisdiction to hear this administrative appeal.

16.     LBF believes that the Tschira Entities' administrative appeal against FINMA's order approving the LBF-LBHI settlement was filed for the purpose of seeking to increase the Tschira Entitles' leverage in the pending LBF/Tschira disputes.

**E.     The LBHI/Tschira Litigation**

17.     On August 23, 2013 LBHI commenced this Adversary Proceeding seeking return of the €100 million that was transferred to the Tschira Entities on September 12, 2008.  On January 27, 2014, Tschira's counsel sent the Subpoena to U.S. counsel for LBF by email and, on February 1, 2014, a duplicate copy of the Subpoena was messengered to U.S. counsel for LBF.

**III.     RELIEF REQUESTED**

18.     Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d), which are made applicable to this Adversary Proceeding by Federal Rules of Bankruptcy Procedure 7026 and 9016, LBF seeks entry of an order quashing the purported service of the Subpoena and/or a protective order that shields LBF from producing any documents pursuant to the Subpoena.

**IV.     BASIS FOR RELIEF REQUESTED**

**A.     Service of the Subpoena Was Improper Under the Federal Rules of Civil Procedure**

19.     The Tschira Entities did not properly serve the Subpoena under the Federal Rules of Civil Procedure.  To properly serve a subpoena on an entity under Federal Rule 45, the serving party must follow the service procedures set out in Rule 4.  *See, e.g., Aristocrat Leisure*

*Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009) ("Federal Rule of Civil Procedure 45 does not specify what constitutes personal service on a corporation in the United States or in a foreign country.  To fill this gap, courts in this Circuit rely on the service of process requirements on corporations set out in Federal Rule of Civil Procedure 4.").

20.     Pursuant to Federal Rule 4(h)(1), effectively serving an entity such as LBF within the United States may be accomplished "by delivering a copy of the [subpoena] to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1).[6]  LBF has no officers or agents in the United States authorized to receive service of process.

21.     Service on an entity such as LBF may be made outside of the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial

---

[6] According to Federal Rules 4(h)(1) and 4(e)(1), service on unauthorized foreign corporations may also be made by following New York State law for serving a subpoena.  One such method is nearly identical to the provision set out by Federal Rule 4(h)(1).  N.Y. C.P.L.R. §§ 2303(a), 311.  Another method is to deliver the subpoena to the New York Secretary of State, and either personally delivering or mailing the subpoena to the corporation.  *Id.* § 311; N.Y. Bus. Corp. Law § 307.  However, mailing a subpoena under this method cannot be used to circumvent the procedural requirements of the Hague Service Convention.  *See, e.g.*, *Derso v. Volkswagen of Am., Inc.*, 159 A.D.2d 937, 938 (N.Y. App. Div. 4th Dep't 1990); *Sardanis v. Sumitomo Corp.*, 279 A.D.2d 225, 228 (N.Y. App. Div. 1st Dep't 2001).

Documents" (the ***Hague Service Convention***").[7]  *See* Fed. R. Civ. P. 4(h)(2), 4(f)(1); Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638.[8]

22.    Instead of following these procedures, the Tschira Entities attempted to effect service by emailing, and then messengering, the Subpoena to LBF's counsel (Gibson Dunn) in New York.  Gibson Dunn is not an agent authorized to receive service of process on behalf of LBF.  *See Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119, 125 (S.D.N.Y. 1979) (holding that even where it renders legal services in various lawsuits throughout the district, "counsel does not become an agent for service of process"); *Gibbs v. Hawaiian Eugenia Corp.*, 581 F. Supp. 1269, 1271 (S.D.N.Y. 1984) (holding that absent proper authorization, one's law firm does not constitute an agent for service of process); *J. & L. Parking Corp., Inc. v. United States*, 834 F. Supp. 99, 102 (S.D.N.Y. 1993) *aff'd* 23 F.3d 397 (2d Cir. 1994) (holding that an "attorney does not become a client's agent for service of process simply because she represented the client in an earlier action").

23.    Tschira itself appears to recognize that sending the Subpoena to counsel for LBF is not effective service absent the consent of LBF or a court order authorizing such service.  On November 4, 2013, Tschira's counsel asked LBF's counsel for his "consent to accept service of

---

[7]  According to Federal Rule 4(f)(3), service could also be made "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  However, Tschira has neither sought nor received court authorization for such alternative means of service.

[8]  The Hague Service Convention was ratified by the United States Senate in 1967 and was ratified by Switzerland in 1994.

our forthcoming discovery requests on behalf of LBF."[9]  No such consent was given.  Instead,

LBF's counsel responded on November 8, 2013 by stating that LBF was not at that time agreeing

to accept service and that it lacked sufficient information to decide if it would be willing to

permit its counsel to accept service on its behalf in the future.[10]  Then, when the Subpoena was

sent to counsel on January 27, 2014, Tschira's counsel stated, "[a]s per our prior discussion, we

would urge that LBF agree to provide the responsive documents so as to avoid the need for

motion practice in the Bankruptcy Court."[11]  Again, no consent to accept service was given.

Instead, LBF's counsel responded on February 6, 2014 by informing Tschira's counsel that he

was still not authorized to accept service and by asking Tschira's counsel for an explanation as to

why there is a legitimate basis for serving LBF through its U.S. counsel.[12]  As of the date of

filing of this motion, no response has been received from Tschira to this request.  In short, the

Subpoena was not properly served under the Federal Rules of Civil Procedure.  Therefore, the

Subpoena should be quashed.  *See Haber v. ASN 50th Street, LLC*, 272 F.R.D. 377, 382

(S.D.N.Y. 2011) (quashing subpoena because of improper service).

**B.**    **The Discovery Requests Must Be Made In Accordance With the Hague Evidence
           Convention**

24.    Beyond the fact that serving LBF through its counsel is improper and ineffective

under the Federal Rules, simply serving the Subpoena on LBF pursuant to the Hague Service

Convention would also be improper because the discovery sought by the Subpoena must instead

---

[9]  The November 4, 2013 letter from Tschira's counsel is attached hereto as Exhibit B.

[10]  The November 8, 2013 letter sent to Tschira's counsel is attached hereto as Exhibit C.

[11]  The January 27, 2014 letter from Tschira's counsel is attached hereto as Exhibit D.

[12]  The February 6, 2014 email sent to Tschria's counsel is attached hereto as Exhibit E.

be requested through the procedures outlined in the Hague Convention on the Taking of

Evidence Abroad in Civil or Commercial Matters, opened for signature, Mar. 18, 1970, 23

U.S.T. 2555, T.I.A.S. No. 7444 (the "***Hague Evidence Convention***")[13] or other internationally

recognized means, such as letters rogatory.[14]

25.     The Hague Evidence Convention outlines a procedure whereby parties may

"request the *competent authority of another Contracting State*, by means of a Letter of Request,

to obtain evidence . . . ."  Hague Evidence Convention, Art. 1 (emphasis added).  As adopted by

Switzerland, the Hague Evidence Convention incorporates several important safeguards that are

not present in the Federal Rules of Civil Procedure.  To wit: "Letters of Request issued for the

purpose of obtaining pre-trial discovery of documents will not be executed if: a) the request has

no direct and necessary link with the proceedings in question; or b) a person is required to

indicate what documents relating to the case are or were in his/her possession or keeping or at

his/her disposal; or c) a person is required to produce documents other than those mentioned in

the request for legal assistance, which are probably in his/her possession or keeping or at his/her

disposal; or d) interests worthy of protection of the concerned persons are endangered."  Swiss

Declarations and Reservations to the Hague Evidence Convention on the Taking of Evidence

---

[13]  The Hague Evidence Convention was ratified by the United States Senate in 1972 and was
ratified by Switzerland in 1994.

[14]  28 U.S.C. § 1781(b)(2) permits the court to transmit letters of request to a foreign or
international tribunal, officer, or agency.  "[A] letter rogatory is the request by a domestic
court to a foreign court to take evidence from a certain witness."  *Intel Corp. v. Advanced
Micro Devices, Inc.*, 542 U.S. 241, 248 n.1 (2004) (quoting Jones, *International Judicial
Assistance: Procedural Chaos and a Program for Reform*, 62 Yale L.J. 515, 519 (1953)).
Although documents identified in the Subpoena could be sought by letters rogatory, LBF
believes that the Hague Evidence Convention will be an easier and faster way for the Tschira
Entities to pursue any discovery that is permitted by this Court.

Abroad in Civil or Commercial Matters, available at

http://www.hcch.net/index_en.php?act=status.comment&csid=561&disp=resdn (last visited

February 10, 2014).

26.     "[B]oth the discovery rules set forth in the Federal Rules of Civil Procedure and

the Hague [Evidence] Convention are the law of the United States." *Société Nationale*

*Industrielle Aérospatiale v. United States Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 533

(1987).  However, the Hague Evidence Convention's procedures should be utilized where

possible to protect a foreign third-party such as LBF.  "In determining whether to apply the

Hague Convention's discovery procedures or those of the Federal Rules, courts should make a

particularized comity analysis, taking into account the specific facts involved, the sovereign

interests at stake, and the likelihood that resort to the convention's procedures will prove

effective." *Gap, Inc. v. Stone Int'l Trading*, 1994 U.S. Dist. LEXIS 1097, at *3, 1994 WL

38651, at *1 (S.D.N.Y. Feb. 4, 1994).

27.     The particularized comity analysis generally includes consideration of  "(1) the

importance to the . . . litigation of the documents or other information requested; (2) the degree

of specificity of the request; (3) whether the information originated in the United States; (4) the

availability of alternative means of securing the information; and (5) the extent to which

noncompliance with the request would undermine important interests of the United States, or

compliance with the request would undermine important interests of the state where the

information is located." *Aérospatiale*, 482 U.S 522, 544 n.28 (internal quotations and citations

omitted).  "In addition to these considerations, courts in this circuit take into account two other

factors: any hardship the responding party would suffer if it complied with the discovery

demands and whether the responding party has proceeded in good faith." *Milliken & Co. v. Bank*

*of China*, 758 F. Supp. 2d 238, 246 (S.D.N.Y. 2010) (citations omitted).  Each of these factors

supports quashing the Subpoena and instead holding that the Hague Evidence Convention

applies to any third-party discovery that is allowed with respect to LBF.

> **i.    Enforcement of the Subpoena Would Undermine Important National Interests of Switzerland**

28.    "'The fifth [*Aérospatiale*] factor—the balancing of national interests—is the most

important, as it directly addresses the relations between sovereign nations.'"  *Milliken*, 758 F.

Supp. 2d 238, 246 (S.D.N.Y. 2010) (quoting *Madanes v. Madanes*, 186 F.R.D. 279, 286

(S.D.N.Y. 1999)); *see also Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 439 (E.D.N.Y.

2008); *Reino de Espana v. Am. Bureau of Shipping*, 2005 U.S. Dist. LEXIS 15685, at *11, 2005

WL 1813017, at *3 (S.D.N.Y. 2005).  This factor strongly supports quashing the Subpoena.

29.    LBF is the subject of its own liquidation proceeding in Switzerland.  That

proceeding has been recognized by this Court as a "foreign main proceeding" within the meaning

of 11 U.S.C. § 1517(b).  Chapter 15 Order ¶ 2.

30.    "American courts have long recognized the particular need to extend comity to

foreign bankruptcy proceedings."  *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709,

713 (2d Cir. 1987) (citations omitted).[15]  "Consequently, American courts have consistently

recognized the interest of foreign courts in liquidating or winding up the affairs of their own

domestic business entities."  *Cunard S.S. Co., Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458

---

[15]  Many of the cases cited herein were decided in the context of old section 304 of the
Bankruptcy Code.  Nonetheless, the legislative history of chapter 15 makes it clear that these
cases should still be consulted.  *See, e.g.*, H.R. Rep. No. 109-31, pt. 1, at 119 (2005),
reprinted in 2005 U.S.C.C.A.N. 88, 181 ("While section 304 [was] repealed and replaced by
chapter 15, access to the jurisprudence which developed under section 304 is
preserved . . . .").

(2d Cir. 1985) (citing, among other authorities, *IIT v. Lam* (*In re Colorado Corp.*), 531 F.2d 463, 468 (10th Cir. 1976); *Kenner Prods. Co. v. Société Foncière et Financiere Agache-Willot*, 532 F. Supp. 478, 479 (S.D.N.Y. 1982); *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259-60 (S.D.N.Y.), *aff'd*, 614 F.2d 1286 (2d Cir. 1979)).

31.    Here, the Tschira Entities are seeking documents that are related to the Swiss Bankruptcy.  In fact, the Tschira Entities' pending administrative appeal against FINMA's order approving the LBF-LBHI settlement is the single largest obstacle that is currently preventing distributions to LBF's creditors.  Certain requested documents, including "All Documents concerning any claim filed by or on behalf of LBHI against LBF in LBF's Swiss liquidation proceedings that address, relate to, or concern the Transfers" and "All Documents and Communications concerning the treatment of the Transfers in the Settlement Agreement between LBF and LBHI . . . ." are directly related to the pending Swiss proceedings and are only tangentially related to the Adversary Proceeding in this Court.  Moreover, other documents sought by the Subpoena are far more intricately related to the pending U.K. case between the Tschira Entities and LBF than they are related to the Adversary Proceeding in this Court.[16] Given Switzerland's strong interest in "winding up the affairs of" LBF, this Court should not interfere with that interest by enforcing the Subpoena.[17]

---

[16]  These include Request Number 2 ("All Documents and Communications concerning any determination or calculations of the Credit Support Amounts") and Request Number 3 ("All Documents and Communications concerning any determination as to whether LBF or the Tschira Entities were 'in the money' with respect to the Transactions at any time up to and including September 15, 2008").

[17]  In contrast to Switzerland's strong interests that favor quashing the Subpoena, "where the [United States'] interest is a generalized interest in 'fully and fairly adjudicating matters before its courts,' courts allocate relatively less weight to the United States in [the] analysis."

[Footnote continued on next page]

32.     Furthermore, Switzerland has a strong "interest in managing discovery within its borders, as expressed through Article 271, paragraph 1 of the Swiss Penal Code . . . ." *In re Aspartame Antitrust Litig.*, 2008 U.S. Dist. LEXIS 109670, at *13, 2008 WL 2275531, at *4 (E.D. Pa. May 13, 2008).  In fact, failure to use the channels contemplated by the Hague Evidence Convention may result in criminal liability for the producing party under Article 271(1) of the Swiss Criminal Code.[18]  For example, the Swiss Federal Supreme Court upheld a judgment finding a Swiss lawyer guilty of a violation of Article 271(1) of the Swiss Criminal Code for having participated, in Switzerland, in the preparation of written testimony to be used as evidence in criminal proceedings in Australia.  Federal Supreme Court of Switzerland, Sept. 30, 1988, 114 DTF IV 128.  The Swiss Supreme Court found that such activity was, by nature, within the exclusive responsibility of public authorities in Switzerland and that, therefore, the Swiss lawyer had violated Article 271(1) of the Swiss Criminal Code by participating in the preparation of written statements to be used as evidence abroad.  *Id.*

33.     Switzerland's interests are particularly acute where, as here, the documents that are being sought through U.S. third-party discovery are directly relevant to the ongoing disputes between Tschira and LBF in Switzerland and the U.K.  Because LBF is not entitled to reciprocal discovery from the Tschira Entities in either of those actions (or in the Adversary Proceeding),

---

[Footnote continued from previous page]
*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 2013 U.S. Dist. LEXIS 85650, at *38, 2013 WL 2661037, at *14 (S.D.N.Y. June 11, 2013) (citations omitted).

[18] Article 271(1) of the Swiss Criminal Code reads as follows: "Any person who carries out activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official, any person who carries out such activities for a foreign party or organisation, any person who encourages such activities, shall be liable to a custodial sentence not exceeding three years or to a monetary penalty, or in serious cases to a custodial sentence of not less than one year."

Switzerland has a very strong interest in ensuring that the discovery provided to the Tschira

Entities is properly balanced with the information that LBF is able to receive from the Tschira

Entities.

34.    In *Laker Airways Limited v. Pan American World Airways*, 607 F. Supp. 324, 325

(S.D.N.Y. 1985), the court addressed a similar situation in which a plaintiff served subpoenas on

foreign non-parties in one action where the plaintiff had separately been pursuing litigation

against the non-parties in a different action.  The court quashed the subpoenas, finding they were

"an end run . . . around the Hague [Evidence] Convention" as well as governing U.K. discovery

rules.  *Id.* at 327; *see also Metro-Godwyn-Mayer Studios, Inc. v. Grokster, Ltd*., 218 F.R.D. 423,

424 (D. Del. 2003) (quashing subpoena served on non-party where certain plaintiffs had

instituted separate action against non-party; thus, there were other alternatives to seek discovery,

and non-party discovery was unnecessary).

### ii.    The Other Comity Factors Support Quashing the Subpoena

#### a.    The Requested Documents Are Largely Available By Other Means And/Or Are of Limited Relevance to the Adversary Proceeding

35.    "Where parties have other means of obtaining the requested documents, courts

consider the requested discovery to have a 'reduced degree of importance.'"  *CE Int'l Res.*

*Holdings*, 2013 U.S. Dist. LEXIS 85650, at *25, 2013 WL 2661037, at *9 (S.D.N.Y. June 11,

2013) (quoting *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 529 (S.D.N.Y.

1987)).  Many of the documents requested from LBF are available from the actual parties to the

Adversary Proceeding.  For example, Request Number 1 seeks "All Document [sic] and

Communications concerning the Transactions [between the Tschira Entities and LBF],

Agreements [defined as "any or all of the agreements between LBF and the Tschira Entities

governing the Transactions . . . ."], Custody Agreements [between the Tschira Entities and LBF],

Guaranties [issued by LBHI], Transfers [by LBHI to the Tschira Entities], or 2008 Amendments

[between the Tschira Entities and LBF]." The Tschira Entities and/or LBHI were party to many

of these documents and communications and therefore the importance of getting them from LBF

is ethereal.[19] *See Cohen v. City of New York*, 255 F.R.D. 110, 122 (S.D.N.Y. 2008) (non-party

need not produce discovery where party has copies in its possession); *Nidec Corp. v. Victor Co.*

*of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties

when the documents sought are in possession of the [other party].").

36.     To the extent the documents are only available from LBF, the documents can be

sought pursuant to the Hague Evidence Convention or letters rogatory. Other Courts have found

that "the Hague Evidence Convention [is] a viable alternative [for] obtaining discovery . . . ."

*CE Int'l Res. Holdings*, 2013 U.S. Dist. LEXIS 85650, at *35-36, 2013 WL 2661037, at *13

(S.D.N.Y. June 11, 2013). Indeed, according to the U.S. Department of State, "service and

taking of evidence under the Hague Conventions will likely be faster that [sic] the three months

---

[19] Moreover, several of the requested documents have limited relevance to the Adversary
Proceeding. For example, Request Number 11 seeks "All Documents concerning any claim
filed by or on behalf of LBHI against LBF in LBF's Swiss liquidation proceedings that
address, relate to, or concern the Transfers" and Request Number 12 seeks "All Documents
and Communications concerning the treatment of the Transfers in the Settlement Agreement
between LBF and LBHI . . . ." These requests seem to have little or nothing to do with the
Adversary Proceeding—*i.e.* the claim that LBHI improperly transferred €100 million to the
Tschira Entities. Instead, these requests seem to be more of a fishing expedition (not allowed
in Switzerland) aimed at bolstering the Tschira Entities' spurious challenge to the LBF-LBHI
settlement in Switzerland. Courts generally find that application of the Federal Rules is
supported only where the requested information is "vital," "critical," "highly important," or
"relevant and important." *See Milliken*, 758 F. Supp. 2d 238, 246 (S.D.N.Y. 2010); *British
Int'l Ins. Co. v. Seguros La Republica, S.A.*, 2000 U.S. Dist. LEXIS 7509, at *27, 2000 WL
713057, at *8-9 (S.D.N.Y. June 1, 2000); *Tiffany (NJ) LLC v. Forbse*, 2012 U.S. Dist. LEXIS
72148, at *14, 2012 WL 1918866, at *5 (S.D.N.Y. May 23, 2012); *CE Int'l Res. Holdings*,
2013 U.S. Dist. LEXIS 85650, at *25, 2013 WL 2661037, at *9 (S.D.N.Y. June 11, 2013).
Here, many of the requests seek information that is not relevant or important to the
Adversary Proceeding.

or longer required when using the letters rogatory method." *See* Department of State Circular on

Judicial Assistance in Switzerland, *available at* http://bern.usembassy.gov/service_process.html

(last visited February 10, 2014).  There is simply no reason to believe that the Hague Evidence

Convention cannot be utilized to obtain relevant and necessary evidence.  Even if there were a

dispute regarding the viability of the Hague Evidence Convention, "the better course is 'to

forebear from assuming that the Hague Evidence Convention is not a viable option until the

[Swiss] authorities have had a meaningful opportunity to comply' with a request." *CE Int'l Res.

Holdings*, 2013 U.S. Dist. LEXIS 85650, at *35, 2013 WL 2661037, at *13 (S.D.N.Y. June 11,

2013) (quoting *Forbse*, 2012 U.S. Dist. LEXIS 72148, at *21, 2012 WL 1918866, at *7

(S.D.N.Y. May 23, 2012)).

### b.     The Requests Lack Specificity

37.     Each of the requests seeks "All Documents and Communications concerning" the

broadly-defined categories of information.  The breadth of the requests here stands in stark

contrast to the "narrowly tailored" requests that courts have found to support production under

the Federal Rules.  For example, in *Milliken*, the requested documents consisted of "only five

interrogatories and eight individual document requests" and each was "directed exclusively to

the account at issue or any lien asserted by the Bank." *Milliken*, 758 F. Supp. 2d 238, 247

(S.D.N.Y. 2010).  Similarly, in *Gucci*, the Plaintiff "narrowly tailored the requests to target

Defendants' accounts." *Gucci America, Inc. v. Curveal Fashion*, 2010 U.S. Dist. LEXIS 20834,

at *8, 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010).  By contrast, the broadly-drafted

requests set out in the Subpoena constitute a "fishing expedition" that would not be allowed

under Swiss law. *See, e.g.*, Federal Supreme Court of Switzerland, Dec. 21, 2005, 132 DTF III

291; Switzerland Federal Department of Justice and Police, *International Judicial Assistance in*

*Civil Matters: Guidelines* 27 (3d ed. 2013).[20] Such "[g]eneralized searches for information, the disclosure of which is prohibited under foreign law, are discouraged." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992).

c.      **The Requested Documents Originated Outside of the United States and Are Presently Located in Switzerland**

38.      "It is undisputed . . . that the documents and communications sought in the [S]ubpoena . . . all originated outside the United States. The overseas location of this information weighs in favor of non-enforcement of the [S]ubpoena." *CE Int'l Res. Holdings*, 2013 U.S. Dist. LEXIS 85650, at *28, 2013 WL 2661037, at *10 (S.D.N.Y. June 11, 2013) (citing *Linde v. Arab Bank*, 262 F.R.D. 136, 150 (E.D.N.Y. 2009); *Gucci*, 2010 U.S. Dist. LEXIS 20834, at *8-9, 2010 WL 808639, at *3.

d.      **LBF Will Suffer Hardship In the Form of An Unfair Litigation Disadvantage If It Is Required to Respond to the Subpoena**

39.      In light of the pending actions between LBF and the Tschira Entities in Switzerland and the U.K, LBF will be unfairly disadvantaged if the Tschira Entities are allowed to use one-sided, third-party discovery in the U.S. to obtain documents from LBF.  LBF has no available means here to seek reciprocal documents from the Tschira Entities and therefore the Subpoena should be quashed so that all discovery between the Tschira Entities and LBF can be overseen by the Swiss authorities.

40.      Moreover, "[i]f compliance with a discovery request would subject the party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure." *CE Int'l Res. Holdings*, 2013 U.S. Dist. LEXIS 85650, at *40 (S.D.N.Y. June 11,

---

[20]  A copy of the Guidelines is attached hereto as Exhibit F.

2013).  As noted above, compliance with the Subpoena could subject LBF and its agents to liability under the Swiss Criminal Code and therefore for this independent reason discovery should be overseen by the Swiss authorities.

### e.    LBF is Proceeding in Good Faith

41.    In considering whether to extend comity, courts also consider "whether the responding party has proceeded in good faith." *Milliken*, 758 F. Supp. 2d 238, 246 (S.D.N.Y. 2010) (citations omitted).  There cannot be any question that LBF is acting in good faith. Although LBF could have simply ignored the Subpoena since it was not properly served or lodged an objection pursuant to Federal Rule 45(d)(2)(B) and forced the Tschira Entities to file a motion to compel, LBF has instead quickly brought this dispute to the Court for prompt resolution so that the Tschira Entities may pursue other avenues of discovery in a timely fashion. *C.f. CE Int'l Res. Holdings*, 2013 U.S. Dist. LEXIS 85650, at *44, 2013 WL 2661037, at *16 (S.D.N.Y. June 11, 2013) ("bad faith delays and dilatory tactics will weigh against the objecting party") (quotations and citations omitted).

WHEREFORE, LBF respectfully requests that the Court (i) enter an order

quashing the Subpoena and/or a protective order precluding any production of documents

pursuant to the Subpoena and (ii) grant such other and further relief as the Court may deem

proper.

Dated:    New York, New York
          February 10, 2014

                              **GIBSON, DUNN & CRUTCHER LLP**


                              By:  /s/ Michael A. Rosenthal_____
                              Michael A. Rosenthal
                              200 Park Avenue
                              New York, New York 10166
                              Telephone:  (212) 351-4000
                              Facsimile:  (212) 715-8000

                              Robert B. Krakow (admitted *pro hac vice*)
                              2100 McKinney Avenue, Suite 1100
                              Dallas, Texas 75209
                              Telephone:  (214) 698-3100
                              Facsimile:  (214) 571-2934

                              *Attorneys for PricewaterhouseCoopers AG, Zurich, as*
                              *Bankruptcy Liquidator of Lehman Brothers Finance*
                              *AG, in Liquidation, a/k/a Lehman Brothers Finance SA,*
                              *in Liquidation*

# Exhibit A

**Subpoena**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
                                                             :
In re:                                                       :          Chapter 11
                                                             :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                     :          Case No. 08-13555 (JMP)
                                                             :
               Debtors.                                      :          (Jointly Administered)
                                                             :
------------------------------------------------------------ X
                                                             :
LEHMAN BROTHERS HOLDINGS INC.,                               :          Adversary Proceeding
                                                             :
               Plaintiff,                                    :          No. 13-01431 (JMP)
                                                             :
     -against-                                               :
                                                             :
DR HC TSCHIRA BETEILIGUNGS GMBH &                            :
CO KG, and KLAUS TSCHIRA STIFTUNG                            :
GGMBH,                                                       :
                                                             :
               Defendants.                                   :
------------------------------------------------------------ X

## SUBPOENA DUCES TECUM

To:    Lehman Brothers Finance, AG in Liquidation, a/k/a/
       Lehman Brothers Finance S.A. in Liquidation
       c/o Gibson, Dunn, & Crutcher, LLP
       200 Park Avenue
       New York, NY 10166
       (212) 351-4000

       PLEASE TAKE NOTICE THAT you are commanded, pursuant to Rule 45 of the Federal

Rules of Civil Procedure (the "Rules") as incorporated by Rule 9016 of the Federal Rules of

Bankruptcy Procedure, to produce for inspection and copying to the offices of Dechert LLP,

1095 Avenue of the Americas, New York, New York 10036, attention: David Kotler, within 30

days of service hereof, all documents specified in Attachment A to this subpoena, in accordance with the Definitions and Instructions set forth in Attachment A.

This subpoena has been issued by the United States Bankruptcy Court for the Southern District of New York. Your failure to comply with this subpoena may be punished as contempt of that court. Pursuant to the requirements of Fed. R. Civ. P. 45(a)(1)(A)(iv) of the Rules, the text of Rule 45(c), (d) and (e) are reproduced herein.

Dated: New York, New York
      January 27, 2014

DECHERT LLP

By:    */s/ David A. Kotler*
       Allan S. Brilliant
       David A. Kotler
       Jeffrey T. Mispagel
       1095 Avenue of the Americas
       New York, NY 10036
       Telephone: (212) 698-3500
       Facsimile: (212) 698-3599

       *Attorneys for Dr HC Tschira*
       *Beteiligungs GmbH & Co KG and*
       *Klaus Tschira Stiftung GGmbH*

**Rule 45, Federal Rules of Civil Procedure, Parts C & D**

**(c) Protecting a Person Subject to a Subpoena.**

(1) Avoiding Undue Burden or Expense; Sanctions. A party or mattorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection; (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protections trial-preparation material must:

(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.

After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve

3

the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.**
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A

## INSTRUCTIONS

1.     Each Request below shall operate and be construed independently and unless otherwise indicated, no Request limits the scope of any other Request.  Unless otherwise stated with respect to a particular Request, the time period applicable to each Request is from April 1, 2007 to September 15, 2008.

2.     You are requested to not only furnish Documents and Communications in your possession but also to furnish documents and communications that are in the possession of your attorneys, investigators, trustees, employees, experts, accountants, agents or anyone else acting on your behalf or under your control, except to the extent that such information is privileged.  If you are not in possession of documents or communications responsive to any Request, so state in writing in response to the Request.

3.     In the event you claim that any of the information called for in these Requests is immune from discovery on the basis of privilege or on any other basis, set forth the information required by Fed. R. Civ. P. 45(d)(2) including expressly claiming the privilege and describing the nature of the withheld document.

4.     You must produce Documents and Communications as they are kept in the ordinary course of business or produce Documents organized and labeled to correspond with the categories in these Requests.

5.     Documents and Communications shall not be edited, cut, redacted or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents.

6.    If any otherwise responsive Document or Communication has been, but no longer is, in Your possession, custody or control, or has ceased to exist, state:

(a)    the date, type and number of pages of the Document or Communication;

(b)    the information contained therein or subject matter of the Document or Communication;

(c)    the author;

(d)    each address and addressee;

(e)    the identity of any attachments or appendices to the Document or Communication;

(f)    all persons having knowledge of the contents of the Document or Communication;

(g)    the present location and custodian of the Document or Communication, if it still exists;

(h)    the date and manner of any destruction or discard of the Document or Communication, or the circumstances under which the Document or Communication ceased to exist; and

(i)    the person authorizing or carrying out such destruction or discard.

7.    All Documents and Communications responsive to this Request for the Production of Documents shall be produced in such a fashion as to indicate clearly the person or file from which they were produced.

8.    For the purposes hereof, the reference to any entity shall include any and all past or present principals, officers, directors, employees, associates, consultants, attorneys, representatives, and agents or any other Person or entity representing such entity or acting on its

behalf as well as any and all affiliate entities, predecessors and successors in interest, and their respective officers, directors, employees, associates, consultants, attorneys, representatives, and agents.

## DEFINITIONS

Pursuant to Rule 7026-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, the uniform definitions and rules of construction set forth in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York are incorporated fully herein.  In addition, the following Definitions shall apply to each and every Request:

1.    "**2008 Amendments**" shall mean any or all of (i) the amendment to the Credit Support Annex, dated as of September 12, 2008, by and between the KTB and LBF and (ii) the amendment to the Credit Support Annex, dated as of September 12, 2008, by and between the Foundation and LBF.

2.    "**Agreements**" shall mean any or all of the agreements between LBF and the Tschira Entities governing the Transactions, including, without limitation: (i) the ISDA Master Agreements dated as of May 16, 2007, (ii) the Schedules thereto, dated as of May 16, 2007, (iii) the Credit Support Annexes to the Schedules, dated as of July 14, 2008, (iv) the Confirmations of the Transactions, and (v) all amendments to the foregoing, including the 2008 Amendments.

3.    "**Credit Support Amounts**" shall have the definition ascribed to it in the Credit Support Annexes to the Schedules, dated as of July 14, 2008.

4.    "**Custody Agreements**" shall mean any or all of the following: (i) the Master Custody Deed, dated as of May 16, 2007, by and between KTB, LBIE and LBF, and (ii) the Master Custody Deed, dated as of May 16, 2007, by and between the Foundation, LBIE and LBF.

5.    "**Foundation**" shall mean Klaus Tschira Stiftung GGmbH.

6.    "**Guaranties**" shall mean any or all of the following: (i) LBHI's original guaranties attached to the Schedule of each ISDA Master Agreement; (ii) LBHI's amended and restated guaranties; and (iii) any other guaranty by LBHI of LBF's obligations to the Tschira Entities.

7.    "**Including**" shall mean "including, but not limited to," and is intended to illustrate the kinds of documents responsive to each Request.  Phrases following "including" are not intended to be exhaustive of the materials sought by the Request and shall not in any way be read to limit the scope of the Request.

8.    "**KTB**" shall mean Dr HC Tschira Beteiligungs GmbH & Co.

9.    "**LBF**" shall mean Lehman Brothers Finance, AG a/k/a Lehman Brothers Finance S.A. and any of its branches, including Lehman Brothers Finance S.A., Netherlands Antilles Branch.

10.    "**LBHI**" shall mean Lehman Brothers Holdings Inc.

11.    "**LBIE**" shall mean Lehman Brothers International (Europe).

12.    "**Lehman Entities**" shall mean You, LBHI, LBIE, and any and all subsidiaries, affiliates, predecessors, successors, divisions, officers, directors, employees or agents of the foregoing.

13.    "**Settlement Agreement**" shall mean the settlement agreement attached as Exhibit A to the Settlement Motion.

14.    "**Settlement Motion**" shall mean the motion to approve a settlement agreement between You and LBHI, filed as Docket No. 36300, in Case No. 08-13555, pending the United States Bankruptcy Court for the Southern District of New York..

15.    "**Transactions**" shall mean the variable forward transactions between the Tschira Entities and LBF pursuant to the Agreements, the Custody Agreements and the Guaranties.

16.    "**Transfers**" shall mean the two transfers aggregating €100 million made on or about September 12, 2008 pursuant to the Agreements on behalf of LBF and for the benefit of the Tschira Entities.

17.    "**Tschira Entities**" shall mean KTB and the Foundaiton.

18.    "**You**" and "**Your**" shall mean LBF, and any and all past or present officers, directors, employees, associates, consultants, attorneys, representatives, and agents or any other Person or entity representing such entity or acting on its behalf as well as any and all affiliate entities, predecessors and successors in interest, and their respective officers, directors, employees, associates, consultants, attorneys, representatives, and agents.

## REQUESTS FOR PRODUCTION

1.    All Document and Communications concerning the Transactions, Agreements, Custody Agreements, Guaranties, Transfers, or 2008 Amendments.

2.    All Documents and Communications concerning any determination or calculations of the Credit Support Amounts.

3.    All Documents and Communications concerning any determination as to whether LBF or the Tschira Entities were "in the money" with respect to the Transactions at any time up to and including September 15, 2008.

4.    All Documents and Communications concerning any request or demand by the Tschira Entities and/or Aeris Capital for the payment of money by any Lehman entity to the Tschira Entities between September 1, 2008 and September 15, 2008, including without

limitation all Documents and Communications concerning the response by any Lehman entity to any such request or demand.

5.      All Documents and Communications concerning any transfers made by any Lehman entity to the Tschira Entities that were unrelated to the Transactions.

6.      All Documents and Communications concerning any scheme to document any gratuitous transfer by any Lehman entity to the Tschira Entities as related to or part of the Transactions.

7.      All Documents and Communications concerning any agreements, arrangements, and/or discussions between LBHI, LBF, and/or LBIE regarding any claims, set-offs or any other form of compensation either in cash or by any other means that LBHI actually has received or is entitled to or suggested to receive in the context of the Transactions or the Transfers.

8.      All Documents and Communication concerning any scheme by Lehman employees and the Tschira Entities to bolster the Tschira Entities' position relative to LBF and LBIE through gratuitous transfers unrelated to the Transactions.

9.      All Documents and Communications concerning Your custody and retention of any collateral pledged or transferred by the Tschira Entities.

10.     All Documents and Communications concerning the Transfers created or received after September 1, 2008.

11.     All Documents concerning any claim filed by or on behalf of LBHI against LBF in LBF's Swiss liquidation proceedings that address, relate to, or concern the Transfers.

12.     All Documents and Communications concerning the treatment of the Transfers in the Settlement Agreement between LBF and LBHI created or received after September 15, 2008.

# **Exhibit B**

**November 4, 2013 Letter from A. Brilliant to M. Rosenthal**

# Dechert
### LLP

1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

ALLAN S. BRILLIANT

allan.brilliant@dechert.com
+1 212 698 3600 Direct
+1 212 698 0612 Fax

November 4, 2013

VIA EMAIL AND REGULAR MAIL

Michael Rosenthal, Esq.
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193

Re:  **LBHI v. Tschira**

Dear Michael:

On August 23, 2013, Lehman Brothers Holdings Inc. ("LBHI") commenced Adv. P. No. 13-1431 (JMP) (the "Adversary Proceedings") against our clients (the "Tschira Entities").  In connection with the Adversary Proceedings our clients seek to serve third party discovery requests on your client, Lehman Brothers Finance AG, in Liquidation ("LBF").

We are advised by foreign counsel that LBF's pending liquidation proceedings do not prohibit the service of discovery on LBF.  We reviewed the Order Granting Recognition of Foreign Main Proceeding and Related Relief under Chapter 15 [Dkt No. 24], entered in LBF's Chapter 15 case, Case No. 09-10583-jmp, and believe that it does not prohibit serving LBF with third-party discovery either.

Case law confirms that the automatic stay does not prohibit serving a debtor-witness with discovery requests.  *See In re Residential Capital, LLC*, 480 B.R. 529, 537 (Bankr. S.D.N.Y. 2012) (the automatic stay "does not, standing alone, protect the Debtors from discovery in third-party actions"); *Signature Bank v. Ahava Food Corp.*, 2008 WL 41262428 at *1 (Bankr. S.D.N.Y. Aug. 19, 2008)(permitting a bank to depose employees of the debtor in order to gather evidence for an action against a non-debtor party, even though the depositions could also unearth evidence that was relevant to the bank's stayed claims against the debtor); *see also In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003)("[I]t is now generally accepted that discovery pertaining to claims against the bankrupt's codefendants is not stayed, even if the discovery requires a response from the debtor, and even if the information discovered could later be used against the debtor"); *In re Hillsborough Holdings Corp.*, 130 B.R. 603, 605 (Bankr. M.D. Fla. 1991) (co-defendant of Chapter 11 debtor in a non-bankruptcy suit was not stayed from deposing employees of the debtor in order to aid in its defense).

18679092.1

# Dechert
### LLP

Michael Rosenthal, Esq.
November 4, 2013
Page 2

In addition, since LBF is subject to personal jurisdiction in the U.S. as a consequence of its purposeful availment of the U.S. courts in both its chapter 15 case and in LBHI's chapter 11 cases, we ask your consent to accept service of our forthcoming discovery requests on behalf of LBF.

Please let us know of your position on this matter as soon as possible, but in no event later than this Friday, November 8, 2013.

Sincerely,

Allan S. Brilliant

# **Exhibit C**

**November 8, 2013 Letter from M. Rosenthal to A. Brilliant**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Michael A. Rosenthal
Direct: +1 212.351.3969
Fax: +1 212.351.6258
MRosenthal@gibsondunn.com

Client: 73630-00008

November 8, 2013

<u>VIA FIRST CLASS AND ELECTRONIC MAIL</u>

Allan S. Brilliant
Dechert LLP
1095 Avenue of the Americas
New York, NY  10036-6797

Re:    <u>LBHI vs. Tschira, Adversary Proceeding No. 13-1431 (JMP) (the "Adversary
        Proceeding")</u>

Dear Allan:

We and our client, PricewaterhouseCoopers AG, Zurich, as Bankruptcy Liquidator of
Lehman Brothers Finance AG, in Liquidation, a/k/a Lehman Brothers Finance SA, in
Liquidation ("LBF"), have reviewed your letter of November 4, 2013 regarding the above-
referenced Adversary Proceeding.

At the present time, LBF does not have sufficient information to decide whether it is willing
to allow us to accept service of discovery requests on LBF's behalf.  To assist LBF to make
this decision, it would be helpful if you would provide us with a copy of the discovery
requests that you intend to serve on LBF.  Please be advised that our receipt of that copy
does <u>not</u> constitute our agreement to accept service and should <u>not</u> be construed or
interpreted as any indication that we would ever agree to accept service on behalf of LBF or
as a waiver of any rights or defenses of LBF.

If you have any questions, please let me know.

Sincerely,

Michael A. Rosenthal

cc: Christiana Suhr Brunner
    Pascal Portmann
    Markus Guggenbuehl
    Jana Essebier
    Robert B. Krakow

101624582.1

Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich · New York
Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

# Exhibit D

**January 27, 2014 Letter from D. Kotler to M. Rosenthal**



1095 Avenue of the Americas
New York, NY 10036
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

---

**DAVID A. KOTLER**

david.kotler@dechert.com
+1 609 955 3226 Direct
+1 609 873 9135 Fax

January 27, 2014

**VIA E-MAIL**

Michael A. Rosenthal
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166

Re: *LBHI v. Tschira, Adv. Proc. No. 13-1431 (JMP)*

Dear Michael:

Following your prior correspondence with Allan Brilliant, I am enclosing a document subpoena directed to Lehman Brothers Finance, S.A., in liquidation ("LBF") with respect to the above adversary proceeding. As per our prior discussion, we would urge that LBF agree to provide the responsive documents so as to avoid the need for motion practice in the Bankruptcy Court.

Thank you for your attention to this matter. We look forward to your prompt response.

Sincerely,

David A. Kotler

David A. Kotler

DAK

Encl.

James J. Marino, Resident Managing Partner
A Pennsylvania Limited Liability Partnership

# **Exhibit E**

**February 6, 2014 E-Mail from M. Rosenthal to A. Brilliant**

**Amponsah, Duke**

---

| | |
|---|---|
| **From:** | Rosenthal, Michael A. |
| **Sent:** | Thursday, February 06, 2014 8:33 AM |
| **To:** | allan.brilliant@dechert.com |
| **Cc:** | Krakow, Robert B.; Graves, Jeremy L.; Markus Guggenbuehl (mguggenbuehl@vischer.com); Jana Essebier (jessebier@vischer.com); coetiker@vischer.com; david.kotler@dechert.com |
| **Subject:** | Tschira Subpoena |

Dear Allan,

On November 4, 2013, you advised me by letter that your clients, the "Tschira Entities" were seeking to serve third party discovery requests upon my client, LBF, in connection with litigation brought against your clients by LBHI. Your letter detailed why you did not believe that LBF's pending liquidation proceedings in Switzerland nor LBF's Chapter 15 case in the U.S. prohibited seeking discovery from LBF and you then asked for my consent to accept service of your forthcoming discovery requests. You will recall that I responded on November 8, 2013 and told you that LBF lacked sufficient information to decide if it was willing to permit us to accept service on its behalf, and I added that it would be helpful in making that decision to see a copy of the requests you intended to serve.

We heard nothing further from you until January 27, 2014, when your colleague David Kotler sent me an email, with a letter from him and a document subpoena attached, asking that "LBF agree to provide the responsive documents so as to avoid the need for motion practice in the Bankruptcy Court." I am also advised that someone, perhaps you, has been seeking to have me personally served with a subpoena, and a duplicate copy of the documents sent in David's email were delivered by messenger to Gibson Dunn's mailroom sometime late Friday or Saturday. LBF has not authorized me to accept service of your subpoena, and takes the position that service must be effected through the Hague Service Convention. LBF also maintains that the discovery requests covered by the subpoena are to be governed by the Hague Convention on Evidence. To the extent you believe there is a legitimate basis for serving LBF through me, as opposed to serving pursuant to the Hague Service Convention, I would appreciate your sharing that with me. Absent persuasive authority that the Hague Convention on Evidence governs your discovery requests and that service of the subpoena on LBF through me is appropriate, LBF will not consent to such attempted service and will continue to insist on proper service through the Hague Service Convention.

I look forward to hearing from you.

Michael


**Michael A. Rosenthal**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.3969 • Fax +1 212.351.6258
MRosenthal@gibsondunn.com • www.gibsondunn.com

# Exhibit F

**Switzerland Federal Department of Justice and Police, *International Judicial Assistance in Civil Matters: Guidelines* (3d ed. 2013)**

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Swiss Confederation

Federal Department of Justice and Police FDJP

**Federal Office of Justice FOJ**

3rd edition 2003 (latest update January 2013)

# International Judicial Assistance in Civil Matters

# Guidelines

©2003 by the Private International Law Unit of the Federal Office of Justice FOJ, together with the Division for International Legal Assistance (FOJ), the Directorate of International Law (DFA) and the Office of the Attorney General of Switzerland

Internet: http://www.rhf.admin.ch/etc/medialib/data/rhf.Par.0064.File.tmp/wegl-ziv-e.pdf

# CONTENTS

ABBREVIATIONS.............................................................................................................III

FOREWORD - DISCLAIMER ............................................................................................1

I.        GENERAL REMARKS.........................................................................................1

   I.A.   THE CONCEPT OF INTERNATIONAL JUDICIAL ASSISTANCE IN CIVIL MATTERS.........................1
   I.B.   ASSISTANCE AND SOVEREIGNTY.................................................................................2
   I.C.   LEGAL BASIS AND APPLICABLE LAW...........................................................................2
      1.   Hague Conventions.................................................................................2
      2.   Bilateral Agreements.............................................................................3
      3.   Absence of an agreement......................................................................3
      4.   Applicable Law.......................................................................................3
      5.   Principle of Reciprocity..........................................................................4
   I.D.   CIVIL OR COMMERCIAL MATTER ................................................................................4

II.       SERVICE OF DOCUMENTS ...............................................................................6

   II.A.   THE CONCEPT OF SERVICE ......................................................................................6
   II.B.   DOCUMENTS THAT MUST BE SERVED BY MEANS OF JUDICIAL ASSISTANCE .......................6
   II.C.   COMPETENT AUTHORITIES.......................................................................................7
      1.   Hague Service Convention.....................................................................7
         1.1   Forwarding authority ...................................................................... 7
         1.2   Receiving Authority ........................................................................ 7
      2.   1954 Hague Convention.........................................................................8
      3.   Absence of an agreement......................................................................8
   II.D.   CHANNELS OF TRANSMISSION .................................................................................8
      1.   Hague Service Convention.....................................................................8
         1.1   Ordinary Channel (Arts. 2 to 7 Hague Service Convention)............ 8
         1.2   Alternative Channels (Arts. 8 to 10 Hague Service Convention)...... 9
         1.2.1 Reservations and declarations made by Switzerland ................ 9
         1.2.2 Consequences of the Principle of Reciprocity..........................10
      2.   1954 Hague Convention.......................................................................10
         2.1   Ordinary Channel (Arts. 1 to 4) ....................................................10
         2.2   Alternative Channels (Art. 1 paras. 3 and 6 1954 Hague Convention) ........10
      3.   Absence of an agreement....................................................................11
      4.   Other Transmission Channels..............................................................11
   II.E.   REQUIREMENTS FOR THE REQUEST .......................................................................11
      1.   Hague Service Convention...................................................................11
         1.1   Form ............................................................................................11
         1.2   Execution and Languages ............................................................12
         1.3   Protection given to addressees, sanctions...................................13
         1.4   Grounds for refusing service .......................................................14
         1.5   Costs...........................................................................................15
      2.   1954 Hague Convention.......................................................................15
         2.1   Form ...........................................................................................15
         2.2   Execution and language ..............................................................15
         2.3   Protection for the addressee........................................................16
         2.4   Costs...........................................................................................16
      3.   Absence of an agreement....................................................................16
   II.F.   SPECIAL QUESTIONS............................................................................................16
      1.   Service addressed to foreign states or foreign state-owned companies .......16
      2.   Service addressed to Swiss nationals abroad ....................................16
      3.   Service of documents which institute proceedings and Recognition of Judgments .....17
      4.   Address of addressee unknown – Service by Public Notice ......................17
      5.   Agreement between the European Community and Switzerland relating to the Free
         Movement of Persons, Federal Act on the Free Movement of Lawyers and
         Assistance .......................................................................................18
      6.   Domicile for service .............................................................................19
      7.   Deadline compliance ...........................................................................19

III.    OBTAINING EVIDENCE ................................................................................................20
  III.A.    FOREWORD ..............................................................................................................20
    1.    Overview...........................................................................................................20
    2.    Cases in which procedures for assistance need not be followed ....................20
  III.B.    THE COMPETENT AUTHORITIES AND TRANSMISSION PROCEDURES ......................21
    1.    Hague Evidence Convention .............................................................................21
      1.1    Under Chapter I of the Hague Evidence Convention .......................... 21
      1.2    Under Chapter II Hague Evidence Convention .................................. 22
    2.    1954 Hague Convention....................................................................................22
    3.    Absence of an agreement .................................................................................22
    4.    Other channels of transmission ........................................................................23
  III.C.    REQUIREMENTS FOR THE APPLICATION ..................................................................23
    1.    Hague Evidence Convention.............................................................................23
      1.1    Application under Chapter I ............................................................... 23
        1.1.1 Form .................................................................................................. 23
        1.1.2 Contents (Art. 3 Hague Evidence Convention) ................................ 23
        1.1.3 Language and translations (Art. 4 Hague Evidence Convention) ...... 23
        1.1.4 Execution .......................................................................................... 24
          a. Applicable Law (Art. 9 Hague Evidence Convention) ................ 24
          b. Obtaining evidence via a person appointed by the authorities addressed
             (Art. 14 para. 3 Hague Evidence Convention) ............................ 24
          c. The right to refuse to testify / Banking secrecy ........................ 25
          d. Participation of the members of the court of the requesting authority (Art. 8 Hague
             Evidence Convention) and/or of the parties or of their representatives (Art. 7 Hague
             Evidence Convention) ................................................................ 25
          e. Grounds for refusal .................................................................... 25
          f. Costs .......................................................................................... 26
        1.1.5 Letter of request relating to "pre-trial discovery" proceedings ........... 26
      1.2    Request under Chapter II of the Hague Evidence Convention (Art. 15 to 22 Hague
             Evidence Convention).......................................................................... 28
        1.2.1 General .............................................................................................. 28
        1.2.2 Conditions laid down in Article 21 Hague Evidence Convention – Procedural safeguards.................. 28
        1.2.3 Authorisation procedure before the Swiss authorities, and content of the application ......................... 29
        1.2.4 Swiss applications to a foreign country or evidence taken by Swiss diplomatic or
             consular representatives...................................................................... 30
    2.    1954 Hague Convention....................................................................................31
      2.1    Basis ................................................................................................... 31
      2.2    Form and content................................................................................ 31
      2.3    Language and translation ................................................................... 31
      2.4    Applicable law ..................................................................................... 32
      2.5    Grounds for refusal ............................................................................. 32
      2.6    Costs.................................................................................................... 32
      2.7    Obtaining evidence directly by the parties in Switzerland or the diplomatic officers or
             consular agents under the 1954 Hague Convention ........................... 32
        2.7.1 Activities carried out by the parties in Switzerland ........................... 32
        2.7.2 Activities carried out by diplomatic officers or consular agents ........ 32
    3.    Obtaining evidence in the absence of an agreement ........................................33
  III.D.    SPECIAL ISSUES .....................................................................................................33
    1.    Hearing by video conference.............................................................................33
    2.    Hearing by Telephone ......................................................................................34
CONTACTS.............................................................................................................................35

latest update January 2013

## ABBREVIATIONS

| | |
|---|---|
| ACLFA | Administrative Case Law of the Federal Authorities |
| Art. | Article(s) |
| CPC | Civil Procedure Code |
| FDJP | Federal Department of Justice and Police |
| FDFA | Federal Department of Foreign Affairs |
| FOJ | Federal Office of Justice |
| JU | Canton Jura |
| NE | Canton Neuchâtel |
| PILA | Federal Act of 18 December 1987 on Private International Law (SR 291) |
| RSJ | Revue suisse de jurisprudence: Swiss Law Review |
| SCC | Swiss Criminal Code of 21 December 1937 (SR 311.0) |
| SJ | La semaine judiciaire |
| SR | Classified Compilation of Swiss Legislation |
| SZ | Canton Schwyz |
| ZH | Canton Zurich |

## FOREWORD - DISCLAIMER

These Guidelines are intended for practitioners (central authorities, judges, lawyers, diplomatic and consular agents) confronted with questions on international judicial assistance in civil matters. Above all, they provide practical advice and information. However, in addition to this advice, the Private International Law Unit of the Federal Office of Justice FOJ feels it would be useful to give its opinion on certain frequently asked questions which are controversial and which have not yet been ruled on by a court. In such cases, the FOJ is unable to provide any guarantee as to the outcome of the proceedings should such matters arise during litigation brought before a court.

In addition to these Guidelines, we would also recommend you consult the "Guide pratique de l'entraide judiciaire international en matière civile et pénale" (Guide on Judicial Assistance). This guide is updated on a regular basis. It gives practical recommendations with regard to the procedures to follow for Swiss requests abroad on a country-by-country basis (To which authority should the request be addressed? How many copies? In which languages? How long does it take for the request to be executed? etc.).

Finally, the FOJ has put together information which can be downloaded from the Internet on the locally competent Swiss authority to contact in a given case (http://www.elorge.admin.ch).

## I.    GENERAL REMARKS

### I.A.    The Concept of International Judicial Assistance in Civil Matters

International judicial assistance in civil matters forms part of the law on international civil procedure, which, besides the issue of assistance, deals with questions relating to the international competence of the courts as well as those relating to the recognition and execution of judgements.

The object of international judicial assistance is the provision of support to the authorities or courts of a requesting state by the state to which the request is made, by carrying out procedural or other official acts and communicating the results to the authorities or courts of the requesting state, so that these can be used in specific proceedings (ACLFA 1985 [49/I], p. 93).

Judicial assistance in the normal sense includes the service of judicial and extra-judicial documents as well as the obtaining of evidence.[1] These Guidelines deal with this category of assistance. Judicial assistance in the broader sense includes other official measures in relation to foreign proceedings, such as international judicial assistance (see e.g. Convention of 25 October 1980 on International Access to Justice [SR 0.274.133] and European Agreement of 27 January 1977 on the Transmission of Applications for Legal Aid [SR 0.274.137]), the enforcement of decisions (see e.g. the Convention of 2 October 1973 on the Recognition and Enforcement of Decisions relating to Maintenance Obligations [SR 0.211.213.02], the Convention of 20 June 1956 on the Recovery Abroad of Maintenance [SR 0.274.15]), assistance in connec-

---

[1]    Such as local inspections, taking statements from witnesses and parties, production of documents, providing expert opinions, etc.

tion with the abduction of children (c.f. Convention of 25 October 1980 on the Civil Aspects of International Child Abduction [SR 0.211.230.02] ; European Convention of 20 May 1980 on Recognition and Enforcement of Decisions concerning Custody of Children and on Restoration of Custody of Children [SR 0.211.230.01]) and in connection with the application of the law (c.f. European Convention of 7 June 1968 on Information on Foreign Law [SR 0.274.161]).

## I.B.   Assistance and Sovereignty

In terms of Article 271 paragraph 1 of the Swiss Criminal Code (SCC; SR 311.0), it is an offence for anyone to carry out "activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official" as well as for anyone to carry out "such activities for a foreign party or organisation" or to encourage such activities. This provision strikes against acts that violate Swiss territorial sovereignty and which as a consequence cannot be carried out without the permission of the Swiss authorities. According to Article 299 paragraph 1 SCC it is an offence for anyone to violate "the territorial sovereignty of a foreign state, in particular by conducting official activities without authorisation on foreign territory." These provisions express the general principle of international law according to which the sovereignty of any state extends only to its national frontiers; accordingly, the authorities of a state cannot, in principle, exercise their public powers outside their territory.

According to the Swiss view – as well as that of numerous other states – the service of judicial or extra-judicial documents as well as the obtaining of evidence for court proceedings constitute the exercise of public powers (on the subject of service see Federal Supreme Court Decision 124 V 47 [50]). Accordingly, these procedures cannot simply be undertaken from beyond the frontiers of the state concerned without authorisation. The authority in question must therefore resort to the mechanisms of assistance, otherwise it will violate the sovereignty of the state in which it is carrying out these acts. The concept of sovereignty under public international law, however, may come into conflict with the prerogative of the judge appointed in another state which results from his or her jurisdiction to rule on a case. We will examine in greater detail the interaction between sovereignty under public international law and the prerogatives of the judge who has local jurisdiction to rule on the case (see III.A.2, p. 20). Finally, the service of certain documents without resorting to judicial assistance is permitted in certain circumstances (see II.B, p. 6).

## I.C.   Legal Basis and Applicable Law

## 1.   Hague Conventions

The multilateral conventions in the field of international judicial assistance in civil cases are as follows:

- The Hague Convention relating to civil procedure of 1 March 1954 (1954 Hague Convention; SR 0.274.12);
- The Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Hague Service Convention; SR 0.274.131)[2]; and

- The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (Hague Evidence Convention; SR 0.274.132).[2]

## 2.    Bilateral Agreements

There are also a number of bilateral agreements between Switzerland and certain states that authorise direct contact between *judicial authorities* or which serve to complement the aforementioned Hague Conventions. Switzerland has entered into such agreements with:

- Germany (SR 0.274.181.361),
- Austria (SR 0.274.181.631; with Austria, not only is direct contact between authorities permitted, but also contact between the authority and the addressee of the proceedings),
- Belgium (SR 0.274.181.721),
- France (SR 0.274.183.491),
- Italy (SR 0.274.184.542),
- Luxembourg (SR 0.274.185.181),
- Greece (SR 0.274.183.721),
- Monaco (SR 0.274.185.671),
- Pakistan (SR 0.274.186.231),
- Poland (SR 0.274.186.491),
- Turkey (SR 0.274.187.631),
- Hungary (SR 0.274.184.181),
- the Czech Republic (SR 0.274.187.411),
- Slovakia (SR 0.274.187.411),
- Estonia (SR 0.274.721).

Although there is no such agreement with Liechtenstein, direct contact between authorities has become customary.

## 3.    Absence of an agreement

Where there is no international agreement, Switzerland applies as an autonomous right the 1954 Hague Convention to the foreign requests that it receives and Swiss requests to other countries (see Art. 11*a* para. 4 PILA; SR 291).

Where there is no agreement and unless there is an established practice to the contrary, Swiss requests must follow diplomatic channels (see II.D.2.2, p. 10).

## 4.    Applicable Law

Judicial assistance in civil matters, which is an area of public international law, falls under federal jurisdiction (Art. 54 para. 1, Art. 122 para. 1 and Art. 166 para. 2 of the Swiss Constitution). There is however only one brief provision at a federal level in Article 11 to 11*c* of the Federal Act of 18 December 1987 on Private International Law (PILA, SR 291). Since acts of judicial assistance in Switzerland are carried out in

---

[2]    The application of Hague Service and Evidence Conventions in the various countries is explained in the "Practical Handbook on the operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters" and the "Practical Handbook on the Operation of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters", which can be ordered from *Permanent Bureau, Hague Conference on Private International Law, 6, Scheveningseweg, 2517 KT The Hague, the Netherlands, www.hcch.net; secretariat@hcch.net*.

accordance with Swiss law (see Article 11*a*, para. 1 PILA), the Swiss Code of Civil Procedure (CPC, SR 272) should be referred to when service is effected and evidence obtained.

## 5.    Principle of Reciprocity

Under Article 21 paragraph 1 of the Vienna Convention on the Law of Treaties of 23 May 1969 (SR 0.111), a state that has not established a reservation in respect of a Convention may take advantage of a reservation established by another state in its relations with that state. Article 21 of the Vienna Convention reflects the principle of reciprocity in public international law. The legal effect of a reservation is that it modifies for the reserving party in its relations with other parties the provisions of the treaty to which the reservation relates to the extent of the reservation. The reservation also modifies those provisions to the same extent for these other parties in their relations with the reserving State. Thus in matters of judicial assistance, the Swiss authorities must refrain from conducting proceedings abroad that are not authorised on Swiss territory, due to the reservations made by Switzerland in respect of the aforementioned Hague Conventions. This applies in particular to reservations relating to the methods by which requests are transmitted (see II.D.1.2.1, p. 9 and II.D.2.2, p. 10). Be that as it may, states may renounce to invoke the principle of reciprocity (see II.D.1.2.2, p. 10). It is important to note here that, in an unpublished judgement (5P.225/1996), the Swiss Federal Supreme Court indicated in an *obiter dictum* that direct service by post to a state that was party to Hague Service Convention and which had not made a reservation in this regard was admissible. In this decision, however, the Swiss Federal Supreme Court failed to mention Article 21 of the Vienna Convention. It also failed to indicate if the recipient state had waived its right to invoke the principle of reciprocity.[3]

## I.D.    Civil or Commercial Matter

The aforementioned Hague conventions all apply to "civil and commercial matters". This concept should be defined in the same manner regardless which of the three Hague Conventions applies.

This concept is not defined in the conventions and is the object of some controversy. However, one special commission of the Hague Conference on International Private Law in which Switzerland participated stated in relation to the Hague Service and Evidence Conventions, that the expression "civil or commercial matter" would have to be interpreted autonomously, without exclusive reference to the law of the requesting state or the requested state, and without the joint application of the laws of both states (see Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, 3rd edition, Wilson & Lafleur Ltée, Montreal, 2006 ["Handbook Hague Service Convention"], p. 26[4]; see also Art. 31 para. 1 Vienna Convention on the Law of Treaties of 23 May 1969). The Special Commission then considered that bankruptcy law, insurance law, and employment law can also fall within the concept of a "civil or commercial matter" (for Switzerland see Federal Supreme Court Decision 94 III 37 and 96 III 65, in which the Federal Supreme Court accepted that this concept also included the proceedings in relation to debts and bankruptcy when the claims are of a civil nature, as well as Federal Insurance Court Decision

---

[3]    See also 5A 128/2010 and 5F.6/2010
[4]    See footnote 2.

1966, 67-73, in which the Swiss Federal Insurance Court stated that it was important to grant assistance in the same manner in the matters relating to social insurance as in civil matters).

The Federal Office of Justice has come around to this point of view and is thus of the opinion that the concept of the "civil or commercial matter" should be understood in the broader sense and need not necessarily correspond to the concept used at a domestic level. It is, however, difficult to give a precise definition of what could be a "civil or commercial" matter in terms of the Hague Conventions. To take a negative approach, it can be said that the Hague Conventions envisage neither a criminal law matter nor a tax matter. Moreover, the fact that in the requesting state the case is designated to be "civil" is of no relevance. Finally, when the case relates to litigation between a public authority and a private individual, where the public authority is acting in the exercise of public powers, the case cannot be considered to have a "civil or commercial" nature. The same applies, in general, when an authority brings civil proceedings against an individual in order to safeguard public interests.[5] In litigation where the plaintiff is a private individual and the defendant is the state, in designating an action as "civil or commercial" account may be taken of the fact that it is a case in which the plaintiff is asserting *i*) a *right* (the state does not have a discretionary power) *ii*) *of a pecuniary nature*, even if under national Swiss law this right relates to an administrative matter (in this sense, Federal Insurance Court Decision 1966, 67-73; see also ruling by the Federal Insurance Court K 18/04 of 18 July 2006).

However, a large number of cases in civil matters – in the traditional sense of the term (family law, law of succession, company law, law of contract, intellectual property law, etc.) – are not necessarily pecuniary in their nature, but nevertheless come within the scope of application of the Hague Conventions. In such cases, when service is effected, the fact that the requesting authority is an administrative authority (e.g. a guardianship authority) is of no significance.

The FOJ is also of the opinion that in cases in which a state court participates in arbitration proceedings (see Articles 184 and 185 PILA), the broad concept of "civil or commercial matters" covered within the meaning of the Hague Conventions on judicial assistance shall apply to the court proceedings.[6]

---

[5]    E.g.: the procedures introduced by the American administrative authorities, such as the Anti-Trust Division of the Justice Department.

[6]    A special commission of the Hague Conference on International Private Law issued a statement on this in January 2003.

latest update January 2013

| II. | **SERVICE OF DOCUMENTS** |
|-----|--------------------------|

## II.A.    The Concept of Service

Most procedural laws provide that in order to allow proceedings to begin the commu-
nications to the parties must be served on them or notified to them in order to have
legal effect. Service is the transmission of documents by an official method: at the
request of a foreign authority, the authorities of a state pass on the documents to the
addressee in return for a simple receipt or by means of a special certificate that
proves that service has been effected. In the Swiss view, this constitutes an official
act (see I.B, p. 2).

Countries with common law legal systems deal with service in a fundamentally differ-
ent way. According to their law, it is the responsibility of the parties to inform their
opponents by serving them with the important documents in the case. Thus there is
not necessarily an official act involved. This completely divergent system can be the
source of some conflict. When seeking solutions, this different approach will be taken
into account.

## II.B.    Documents that must be served by means of Judicial Assistance

The Hague Conventions are directed as much at "judicial documents" as at "extraju-
dicial documents". A "judicial document" is understood as *any document that relates
to contentious or non-contentious proceedings or the arrest of the assets of a debtor*"
(CAPATINA, L'entraide judiciaire internationale en matière civile and commercielle, Re-
cueil des Cours 1983 [179], p. 347). "Extra-judicial documents" include "*documents
intended to produce effects beyond any procedure that is ongoing in a court of law*"
(CAPATINA, op. cit., p. 348). Extra-judicial documents must, however, emanate from
an authority or a judicial officer. Notaries are regarded as judicial officials inasmuch
as they undertake a public duty in this particular case.

In general, any judicial or extra-judicial document must be communicated by means
of judicial assistance. Indeed, on the one hand, assistance provides a better guaran-
tee that the rights of the addressee will be respected, particularly the right to be
heard[7]. On the other hand, from the point of view of public international law, the ser-
vice of such documents on Swiss territory without passing through the judicial assis-
tance channel constitutes a violation of territorial sovereignty. However, it is accepted
that when the document in question has no legal effect or is not liable to have any
legal effects on the addressee, the judicial assistance channels need not necessarily
be followed (ACLFA 1976 [40/I], p. 105 s.; Circular of 5.12.1956 from the Administra-
tive Commission of the Supreme Court of the Canton of Zurich, RSJ 1957, p. 16).

---

[7]    The fact, for instance, to ask from the requesting State to furnish translations aims to guaranty the
right to be heard of the addressee.

## II.C.    Competent Authorities

## 1.    Hague Service Convention

### 1.1    Forwarding authority

Article 3 of the Hague Service Convention provides that the authority or judicial offi-
cer competent under the law of the state in which the documents originate should
forward his request to the Central Authority of the state addressed. It is thus the law
of the requesting state that primarily determines the competent authority for forward-
ing the requests for foreign assistance. It is, however, important to note that it has
been accepted that lawyers, to the extent that their law permits them to serve docu-
ments, must be regarded as *judicial officers* and hence as persons authorised to ap-
proach the Central Authority of the state addressed. Private individuals, however, (for
example the parties) are not, in themselves, authorised to approach the Central Au-
thority directly, even if, under their law, they are entitled to serve documents (Ex-
planatory Report by TABORDA FERREIRA, Acts and Documents of the 10th session
(1964), Volume III, Service of Process, p. 368; the competent authorities in each
country can be found on the website of the Hague Conference on International Pri-
vate Law).

The competent Swiss authorities forward their requests abroad via the Central Au-
thority of the requested State.[8] However, they address their requests to the compe-
tent authority or court in the place where the relevant proceedings are taking place
(e.g.: "to the competent civil court ..."). As previously mentioned, Switzerland has
concluded bilateral agreements with certain countries that permit direct contact be-
tween authorities (see I.C.2, p. 3). For additional information, please consult the
Guide on Judicial Assistance.

### 1.2    Receiving Authority

Article 2 of Hague Service Convention provides for the designation of central authori-
ties that are responsible for receiving requests for assistance. Article 18 paragraph 3
of the Hague Service Convention permits states to designate more than one Central
Authority.

In Switzerland, the receipt of requests from foreign states and the processing of
these is a cantonal responsibility. Accordingly, there are 26 cantonal Central Authori-
ties. These authorities ensure, on the one hand, that the requests conform to the
formal requirements of Hague Service Convention or any other provisions that must
be taken into consideration, and, on the other hand, that judicial assistance does not
clearly appear to be excluded for any other reason. If there is no reason to do other-
wise, they take the action required. If a request does not satisfy the requirements of
the Service Convention, the Central Authority informs the requesting authority without
delay (Art. 4 of the Service Convention).

Since it can prove very difficult for the requesting state to know which of the 26 cen-
tral cantonal authorities has jurisdiction, the FOJ is also designated to be a Central

---

[8]    JU, NE, SZ (for all requesting authorities, apart from courts) and ZH require that outgoing requests
be transmitted via the central cantonal authority. This authority transmits them to the Central Au-
thority of the state addressed.

Authority to which requests may be addressed irrespective of where they may have to be executed. The jurisdiction of the FOJ is secondary. It does not subject the requests to any examination before passing them on to the competent cantonal authorities, but it consults with the Cantons and provides any coordination that may be necessary. Please note that the FOJ has created a database listing all the competent authorities in Switzerland (http://www.elorge.admin.ch).

For Swiss requests addressed to foreign states, see the Guide on Judicial Assistance.

## 2.    1954 Hague Convention

The 1954 Hague Convention does not provide for the designation of central authorities. Under Article 1 paragraph 1 of the 1954 Hague Convention, requests for assistance must follow "consular" channels. This means that foreign authorities – this can be a lawyer if, under the law of the requesting state, he is entitled to serve documents – send the documents to be served to the consulate, embassy or other representation of its country in Switzerland. This representation addresses a request to the FOJ, which in turn passes it on to the competent cantonal authority (see Art. 11 PILA; Ordinance of 17.11.1999 on the Organisation of the FDJP [SR 172.213.1].

Requests from Swiss authorities must also pass through the FOJ (see Art. 11 PILA; Ordinance of 17.11.1999 on the Organisation of the FDJP [SR 172.213.1].The FOJ passes these on to the relevant Swiss representation in the receiving state, which in turn passes the requests on to the authority designated by the receiving state (Art. 1 para. 1 1954 Hague Convention; see Guide on Judicial Assistance).

In relation to incoming or outgoing requests for assistance, the FOJ confines itself to examining whether these comply with the formal requirements of the applicable international conventions and ensuring that international judicial assistance does not appear to be excluded for any other reason.

## 3.    Absence of an agreement

Where there is no international agreement, Switzerland applies the 1954 Hague Convention to any foreign requests and Swiss requests to other countries (see Art. 11*a* para. 4 PILA; I.C.3, p. 3). Reference is therefore made to the comments made in II.C.2, p. 8.

Swiss requests made to foreign states must, in the absence of contrary practices, follow diplomatic channels (see II.D.2.2, p. 10). For a description of the procedure applicable in each country, reference is made to the Guide on Judicial Assistance.

## II.D.    Channels of Transmission

## 1.    Hague Service Convention

### 1.1    Ordinary Channel (Arts. 2 to 7 Hague Service Convention)

As already indicated, under Article 2 of the Hague Service Convention, each contracting state must designate a Central Authority that has the task of receiving and dealing with requests for service from another contracting state. The Hague Service

Convention only requires the creation of a Central Authority for the purpose of *receiving* requests for service. Thus a request that is being sent is not required to pass through the forwarding country's own Central Authority.[9] The authority designated as competent according to the law of the requesting state (see II.C.1.1, p. 7) addresses its request to the Central Authority of the requested state.

### 1.2    Alternative Channels (Arts. 8 to 10 Hague Service Convention)

#### 1.2.1   Reservations and declarations made by Switzerland

In addition to the ordinary channel, the Hague Service Convention, in its Articles 8 to 10, provides for alternative channels for effecting service.

Switzerland has, however, made reservations to Articles 8 and 10.

Thus in relation to Article 8 of the Hague Service Convention, Switzerland permits service of documents through consular or diplomatic agents only with regard to persons who are nationals of the originating state (see ACLFA 1968-1969 [34/15], p. 34).[10] If that is not the case, the ordinary channel has to be followed. Consular and diplomatic agents are not permitted in any case to resort to coercive measures in order to effect service.

With regard to Article 10 of the Hague Service Convention, Switzerland declares its opposition to *direct service abroad by postal channels* as provided for in letters a), b) and c) of that Article. Nevertheless, it sometimes happens that documents are sent directly from abroad to parties resident in Switzerland. This occurs primarily from countries with common law legal systems, in which the service of documents is the responsibility of the parties and not of the authorities. In other words, and contrary to the Swiss view, such a procedure is not necessarily considered an official act in those countries. The recipient of documents served in this way can notify the matter to the Federal Department of Foreign Affairs (FDFA). If Swiss sovereignty is violated, the FDFA will instruct the relevant Swiss Embassy to intervene with the originating authorities and explain that this method of service is punishable under Article 271 of the Swiss Penal Code.[11,12] *It should, however, be noted that the inadmissibility of direct service by mail in Switzerland does not automatically invalidate the service of the document as part of the foreign proceedings. It may, however, have repercussions with regard to whether the judgment will be recognised.*[13] At any rate, the FDFA regularly gives notice that errors in the service of documents can under Swiss law result in the non-execution of foreign civil judgments (see II.F.3, p. 17). Occasionally, service is effected again by means of judicial assistance.

Finally, Article 9 of the Hague Service Convention provides for the use of consular channels, that is, the ordinary channel stipulated in Article 1 of the 1954 Hague Convention (see II.D.2.1, p. 10). With regard to this, Switzerland has also designated the cantonal central authorities as recipient authorities for requests from abroad.

---

[9]   For Switzerland, see footnote 8.

[10]  However, if the addressee of the document is a national of both the requesting state and the state receiving the request, service by consular or diplomatic agents is not permitted. It remains possible if the addressee is a national of the requesting state and a third state.

[11]  See I.B, p. 7

[12]  However, only an intentional act is unlawful, and it is practically impossible to prove that an act was intentional.

[13]  See also II.F.3, p. 23

### 1.2.2   Consequences of the Principle of Reciprocity

In application of the *principle of reciprocity*, the Swiss reservations may be invoked by the recipient state in relation to requests for service coming from Switzerland, even if the recipient state has not made the same reservations (see I.C.5, p. 4). Thus, the Swiss authorities may not use the transmission channels in respect of which Switzerland has stipulated reservations. Recipient states may, however, waive their right to invoke the principle of reciprocity. The Guide on Judicial Assistance mentions several options open to the Swiss authorities (as the FOJ's primary recommendation or as an alternative channel of transmission), depending on the state in question, to use channels that Switzerland has objected to but which may be nonetheless used when the requested state has refused to invoke the principle of reciprocity. For example, according to the FOJ's primary recommendation, in relations between Switzerland and *Ireland, Canada* and *India* it is permitted for requests for service coming from Swiss authorities to be sent via the FOJ to the competent Swiss representation. The Swiss representation serves the documents on the addressees by registered mail with acknowledgement of receipt. In matters between Switzerland and the *United States of America*, the cantonal central authorities can address their request to the competent Swiss representation, which in turn serves the documents directly on the addressee (see Federal Supreme Court Decision 109 III 100; for the requirements in relation to form, see II.E.1.1, p. 12).

## 2.   1954 Hague Convention

### 2.1   Ordinary Channel (Arts. 1 to 4)

The 1954 Hague Convention provides for the service of documents via the consular channel (Art. 1).

This means that the competent foreign authorities address their requests to the consulate, embassy or any other representation of their country in Switzerland. This representation forwards the request to the Federal Office of Justice, which, in turn, forwards it to the relevant cantonal authority.

Requests from a Swiss authority are addressed to the FOJ, which forwards them to the competent Swiss representation in the receiving state, which, in turn, sends them on to the authority designated by the recipient state (Art. 1 para. 1 1954 Hague Convention).

### 2.2   Alternative Channels (Art. 1 paras. 3 and 6 1954 Hague Convention)

First of all, the states that are parties to the 1954 Hague Convention may declare that they wish to use the diplomatic channel instead of the consular channel (Art. 1 para. 3). In such a case, requests from Switzerland must be addressed to the FOJ, which forwards them to the Swiss representation in the receiving state, which, in turn, forwards the request to the foreign affairs department of the receiving state. The latter sends the request on to the competent local authority.

Moreover, Article 6 of the 1954 Hague Convention permits direct service by mail to an addressee resident abroad, or via the competent judicial or public officials of the recipient country, or, alternatively, through diplomatic or consular agents. *Although Switzerland has not made any specific reservation in relation to this, it does not permit service by mail on its own territory.* However, Switzerland permits service by dip-

lomatic or consular agents as provided for in the Hague Service Convention, that is to say, if the addressee is a national of the state of origin of the documents (see ACLFA 1968-1969 [34/15], p. 34 and footnote n°10 above). The consular or diplomatic agents are not permitted to make any use of coercive measures.

Just as is the case under the Hague Service Convention, the *principle of reciprocity* applies under the 1954 Hague Convention. Thus the Swiss authorities may not use channels for service abroad that are not permitted in Switzerland (see I.C.5, p. 4).

### 3.    Absence of an agreement

Where there is no international agreement, Switzerland applies the provisions of the 1954 Hague Conventions to requests received from abroad and to Swiss requests to other countries (see Art. 11*a* para. 4 PILA; I.C.3, p. 3). Switzerland also accepts the service of documents by consular or diplomatic agents on the requesting country's own nationals. Finally, Switzerland does not accept direct service from abroad by mail.

Swiss requests to other countries must, unless there is a contrary custom, for example in favour of consular channels, follow diplomatic channels (see II.D.2.2, p. 10). Direct service by mail is permitted only if the recipient state accepts this form of service. For a description of the procedure applicable to each country, please see the Guide on Judicial Assistance.

### 4.    Other Transmission Channels

All Hague Conventions authorise states to enter into bilateral agreements that provide more favourable conditions. As a result, direct correspondence between requesting and recipient authorities or courts in certain countries remains possible (see I.C.2, p. 3).

Diplomatic channels can always be used (see II.D.2.2, p. 10), even where a convention provides for a quicker means of service. Where the Hague Service Convention applies, its Article 9 paragraph 2 provides for a special rule in this regard.

### II.E.    Requirements for the Request

### 1.    Hague Service Convention

#### *1.1    Form*

Article 3 of the Hague Service Convention provides for the use by contracting states of a model form for requesting the service of judicial or extra-judicial documents. The text printed on the form must include a version in either English or French.[14] It consists of three parts, the request for service, a certificate containing the details of execution, and a summary of the document being served (Art. 7 para. 1 Hague Service Convention). The blanks corresponding to the printed text are completed either in the language of the state receiving the request, or in English or French (Art. 7 para. 2 Hague Service Convention). Some states require, in our opinion wrongfully, that the

---

[14]    Under article 7 the Hague Service Convention, the additional printing of the text in one or more official languages of the requesting state (state of origin) is permitted.

printed text and/or the responses be written in their language (Guide on Judicial Assistance).

The model form and the documents to be served are to be sent in duplicate (Art. 3 para. 2 Hague Service Convention). The authentication of the documents or any similar formality is not required (Art. 3 para. 1 Hague Service Convention). Regarding the necessity to join the translation of the exhibits, see II.E.1.2, p. 12.

When the alternative channels of service provided for in Articles 8 and 10 Hague Service Convention are used (see II.D.1.2, p. 9), the model forms do not need to be used, and no translation is required. It should, however, be noted that if the addressee is unable to understand the nature and significance of the documents served, this may pose problems should the judgment be recognised abroad (violation of the right to be heard)[15] and this may remain a problem even where the receiving state permits the use of the alternative channels for service. Accordingly, it is recommended that the Hague Service Convention forms are used for the alternative channels as well (at least the section "Summary of the document to be served" of the model form [pp. 3 and 4]) or that a translation of the documents in the language of the recipient state is enclosed, in order to ensure that the addressee is informed of the nature of the documents served. The Hague Conference on Private International Law adopted a recommendation to this effect in 2003 and 2009 (see points 65 - 68; point 31). The FOJ recommends that the form be completed in the language of the requested state.

### 1.2    Execution and Languages

The Swiss authorities effect the service of documents requested by a foreign state, on the first occasion and in the absence of any special requests by the requesting state, by "informal delivery" to the addressee. Simple delivery is covered by Article 5 paragraph 2 of the Hague Service Convention. The translation of the documents to be served is not necessary for this mode of service; service is effected, as a general rule, by registered mail or by judicial act.[16] This form of service is, however, permitted only if the addressee accepts service (Art. 5 para. 2 Hague Service Convention). If the addressee refuses to accept service by simple delivery, the Central Authority or the competent cantonal court will make a note of this on the certificate and will notify the requesting state that formal service has to be effected. For formal service, however, the Swiss authorities require the translation of the documents into German, French, or Italian, depending on the region in question, before attempting to service the document again (see the Swiss reservation to Art. 5 para. 3 of the Hague Service Convention). In order to guarantee the right of the addressee as provided by Article 5 paragraph 2 of the Hague Service Convention to refuse service by simple delivery and to require a translation, it is advisable to inform the addressee in an appropriate manner. The FOJ has thus recommended the cantonal authorities to inform addressees of their rights at the moment of service and to fix, where appropriate, a short period within which to exercise such rights. For example, if service is effected by mail, an accompanying letter or a notice on the envelope could inform addressees of their rights and the way in which they should be exercised. Simple service by the

---

[15]    However, the judgment will not have to be recognised abroad in each Swiss procedure.
[16]    Delivery of a "judicial document" is regulated in the general terms and conditions of the Swiss Post Office and its information brochure. Article 138 CPC on the form in which judicial documents are served states in paragraph 1: "The summons, rulings and decisions are served by registered mail or by other means against confirmation of receipt".

procedure used for court documents is not sufficient to allow addressees to exercise rights.

With regard to Swiss requests to other countries, it is recommended to consult the Guide on Judicial Assistance to find the requirements specified by the recipient country. Certain countries require the immediate translation of the documents to be served and will therefore not proceed in the first instance with service by simple delivery.

The requesting authority can demand that service be made formally from the beginning either according to one of the forms prescribed by the law of the receiving state (Art. 5 para. 1 let. a Hague Service Convention), or according to a special form prescribed by the law of the requesting state (Art. 5 para. 1 let. b Hague Service Convention). In the latter case, the demand will only be met if the required form is compatible with the law of the receiving state. If a request is made for formal service or if this form of service proves to be necessary due to the refusal of the addressee to accept service, the requesting state may have to pay the resultant costs (Art. 12 para. 2 Hague Service Convention; see II.E.1.5, p. 15).

It is important to note that the effects of the impossibility or refusal of service are not governed by the Hague Service Convention. It is not easy to answer the question as to which law – that of the requested state or that of the requesting state – service is to be considered to be legally valid. The Swiss Federal Supreme Court has attempted to answer this question (SJ 2000, p. 89 et seq.). In the view of the FOJ it is generally the law of the requested state that should apply, unless the law of the requesting state imposes particular requirements to be met. In the latter case, in the view of the FOJ, it will be up to the requesting authority to request a special form of service (Art. 5 para. 1 let. b Hague Service Convention).

With regard to a foreign request for service in Switzerland, the authority effecting service must complete *the relevant certificate in every case, even if it is not enclosed with the request*.

## 1.3    Protection given to addressees, sanctions

Articles 15 and 16 of the Hague Service Convention provide for a mechanism intended to protect the defendant who has not received a served document.[17] The aim of Article 15 is therefore to ensure rights of defence (Report by TABORDA FERREIRA, Acts and Documents of the 10th session (1964), Volume III, Service of Process, p. 93).

Article 15 of the Hague Service Convention deals with the service of a summons or equivalent document in accordance with the provisions of the Convention when the defendant fails to appear.

Article 15 therefore provides in its first paragraph that when a summons or equivalent document has to be transmitted abroad for the purpose of service, under the provisions of the Hague Service Convention and the defendant fails to appear, the court is required to *defer judgment* until it is established that *the document was either served*

---

[17]   With reference to Article 15 of the Hague Service Convention see also Article 26 paragraph 3 Lugano Convention (Convention of 30 October 2007 on jurisdiction and the recognition and enforcement of decisions in civil and commercial matters (SR 0.275.12, revised version of the Convention of 16 September 1988 on jurisdiction and the enforcement of judgments in civil and commercial matters).

*in accordance with the methods prescribed by the internal law of the state addressed*
(Art. 15 para. 1 let. a Hague Service Convention), *or the document was actually delivered to the defendant or to his residence by another method provided for by the Hague Service Convention* (Art. 15 para. 1 let. b). The first possibility envisages cases where service has been effected in accordance with Article 5 paragraph 1 let. a of the Hague Service Convention. The second possibility is aimed at cases of transmission in accordance with Article 5 paragraph 1 let. b of the Hague Service Convention as well as cases where alternative channels of transmission (see II.D.1.2, p. 9) are used. In this second case, it is not sufficient that the alternative channels of transmission or a method of transmission peculiar to the requesting state (Art. 5 para. 1 let. b Hague Service Convention) was used, it is also necessary for *service to be effected on the defendant in person or at least at his residence* (Report of TABORDA FERREIRA, op. cit., p. 95). With regard to alternative channels of transmission, the reservations made by contracting states in relation to certain methods of transmission should be taken into account. In addition, the court may only defer judgement, whatever the situation, if service has been effected in sufficient time for the defendant to be able to defend himself.

Article 15 paragraph 2 of the Hague Service Convention qualifies the protection given by the first paragraph to the extent that it allows contracting states to declare that their courts may give judgment irrespective of paragraph 1, subject to the conditions, however, that *i)* the document has been transmitted by one of the methods provided for by Hague Service Convention *ii)* that a period of not less than six months has elapsed and *iii)* that no certificate has been obtained despite every reasonable effort being made by the competent authorities. Switzerland has not made any declaration in terms of Article 15 paragraph 2 of the Hague Service Convention. This option is, however, open to any Swiss court through the application of the principle of reciprocity (see I.C.5, p. 4) when service should have taken place in a state which has made such a declaration.

If, however, a judgment has been given against a defendant who has not been able to appear, the defendant may, under Article 16 of the Hague Service Convention, request the court to relieve him of the effects of failing to appeal against the judgment within the given time. Article 16 does not, however, apply to judgments relating to the status or capacity of persons (Art. 16 para. 4 Hague Service Convention).

### 1.4    Grounds for refusing service

If the Central Authority concludes that the provisions of the Hague Service Convention have not been complied with, Article 4 of the Convention mandates that the Central Authority promptly inform the applicant.

Furthermore, service may be refused if the document does not relate to a civil or commercial matter (Art. 1 para. 1 Hague Service Convention; see I.D, p. 4), if a particular form is required that is contrary to the law of the state addressed (Art. 5 para. 1 let. b), or if the execution of service is such that it would infringe upon the sovereignty or security of the state addressed (Art. 13 para. 1). The term "sovereignty" must be interpreted restrictively. It cannot be understood as being equivalent to public policy. In this sense, Article 13 paragraph 2 of the Hague Service Convention indicates that the execution of a request may not be refused solely on the ground that the law of the state addressed claims exclusive jurisdiction over the subject matter of the action or does not permit the action upon which the application is based. In

other words, these grounds are not considered relevant to the sovereignty of the state addressed.[18]

## 1.5   Costs

In principle, no charges may be made for services relating to the service of documents relating to judicial assistance (Art. 12 para. 1 Hague Service Convention). There is, however, an exception for cases requiring the involvement of a judicial officer or the use of a particular method of service (Art. 12 para. 2 let. a and b Hague Service Convention). Moreover, bilateral agreements may provide different rules (see I.C.2, p. 3).

## 2.   1954 Hague Convention

The 1954 Hague Convention served as the basis for the Hague Service Convention of 1965. The requirements and conditions applicable to the service of documents under the Hague Service Convention were largely restated and differ from those contained in the 1954 Hague Convention only in a few points. Only these differences are considered below.

## 2.1   Form

Requests for service based on the 1954 Hague Convention need not be transmitted in a standardised form.

Under Article 1 paragraph 1 of the 1954 Hague Convention, the consul's request must indicate the authority issuing or forwarding the document, the names and capacities of the parties, and the address of the addressee. In addition, the nature of the document in question must be mentioned, i.e. it should state the subject matter of the action and describe in detail the documents to be served (e.g.: legal claim, response to the claim, judgment on the evidence; Art. 1 para. 1 1954 Hague Convention). The request shall be in the language of the requested authority. A receipt should always be attached to the request. If service must be effected in a special form (e.g. according to the law of the requesting state), it is advisable to request this expressly and to justify the request (Art. 3 1954 Hague Convention).

## 2.2   Execution and language

Here too, service can be effected either by simple delivery (Art. 3 1954 Hague Convention together with Art. 2 1954 Hague Convention; without translation; see II.E.1.2, p. 12), subject to refusal by the addressee, or by formal service (with certified[19] translation; in Switzerland either in German, French or Italian, depending on the place of execution of the request, see Federal Supreme Court Decision 103 III 69). With regard to simple delivery, it should be borne in mind that the FOJ is of the opinion that it is advisable to inform the addressee of his right to refuse service if the documents have not been translated (see II.E.1.2, p. 12). The court is not obliged to complete the certificate; a receipt signed by the addressee is sufficient.

---

[18]   On the subject of third party debt orders see A. R. MARKUS, Drittschuldners Dilemma, in: Rechtsetzung und Rechtsdurchsetzung, Festschrift für Franz Kellerhals zum 65. Geburtstag, Stämpfli Verlag Bern 2005; also appeared in: BlSchK, 2005, H 1, p. 1 ff.

[19]   This means certification that the translation is complete and correct.

*2.3    Protection for the addressee*

In contrast to the Hague Service Convention, the 1954 Hague Convention does not provide any mechanism for the protection of the rights of the defendant.

*2.4    Costs*

The execution of the request for service may not give rise to the right to the reimbursement of costs, unless service is made forcibly or if a special form is required (Art. 7 para. 2 Hague Service Convention). Moreover, bilateral agreements may provide different rules (see I.C.2, p. 3).

## 3.    Absence of an agreement

Where there is no international agreement, Switzerland applies the provisions of the 1954 Hague Conventions to requests received from abroad and to Swiss requests to other countries (see Art. 11*a* para. 4 PILA; see also Art. 11*a* para. 1 - 3 PILA).

With regard to requests made by Switzerland to other countries, reference is made to the Guide on Judicial Assistance. It is, however, worth noting that, in relation to costs, Swiss representations in those states where no agreement exists in this regard will request the Swiss authority to guarantee a refund in the event that charges are made.

## II.F.    Special Questions

## 1.    Service addressed to foreign states or foreign state-owned companies

In the case of service addressed to foreign states (including embassies and consulates) or to foreign state-owned companies, Article 16 of the European Convention on State Immunity applies (SR 0.273.1). Under paragraph 4 of this provision, the periods for entering into the proceedings and the methods of appeal against a judgment by default begin to run two months after the service of the document or the judgment with the department of foreign affairs of the state addressed. In addition, the courts having jurisdiction may not assign a period shorter than two months from the receipt of the documents by the department of foreign affairs (Art. 16, para. 5). These rules, which are in keeping with normal practices, should also be respected outside the scope of application of the said Convention.
The FOJ is willing to provide support and explanation of the procedures in the different countries.

## 2.    Service addressed to Swiss nationals abroad

Reference should be made to the explanations on alternative channels for affecting service addressed to Swiss nationals abroad by Swiss diplomatic or consular representatives. These can be found under II.D.1.2.1, p. 9, II.D.2.2, p. 10, II.D.3, p. 11 and on the pages relating to each country in the Guide on Judicial Assistance. For requirements regarding translation and form and the explanations under II.E.1, p. 11 and II.E.2, p. 15 apply mutatis mutandis.

If the Swiss citizen has more than one nationality, i.e. is also a national of the requested state, the ordinary channel should be followed; the Swiss consular or diplo-

matic representative may not serve documents (for exceptions see II.D.1.2.2, p. 10). If the Swiss citizen is also a national of a third state, the Swiss consular or diplomatic representative is permitted to serve documents.[20]

Besides the alternative channels described, there are further ways of serving documents listed on the pages referring to each country.

### 3.   Service of documents which institute proceedings and Recognition of Judgments

The Hague Conventions do not regulate the legal effects of serving documents.

Furthermore, the regulations that govern the service of documents in relation to the main proceedings are not necessarily the same as those applied in relation to the recognition procedure, in which, as a condition for the recognition of a judgment, it must be ensured that the document instituting the proceedings was duly served (see for the respective requirements e.g. Art. 27 para. 2 let. a PILA; but see also Art. 34 no 2 of the Convention of 30 October 2007 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters [LugC[21], SR 0.275.12] and the declaration issued by Switzerland on Article III para. 1 of Protocol 1;[22]). Thus, as we have already indicated, although the USA does not object to the service of documents on its territory by diplomatic agents, the subsequent judgment will not necessarily be recognised, for example, when the documents have been served in a language that the addressee did not understand (see II.E.1.1, p. 12). For the precedents and doctrine relating to these questions in Switzerland, which are not always consistent, see for example DUTOIT, Commentaire de la loi fédérale du 18 décembre 1987, 4th ed., Basel 2005, no 8 ad Art. 27 ; HONSEL/VOGT/SCHNYDER/BERTI (edit.), Basler Kommentar, Internationales Privatrecht, 2nd edition, Basel 2007, no 9 ff ad Art. 27 ; GIRSBERGER/HEINI/KELLER/KREN KOSTKIEWICZ/SIEHR/VISCHER/VOLKEN (edit.), Zürcher Kommentar zum IPRG, 2nd ed., Zurich 2004, no 74 ff ad Art. 27; Federal Supreme Court Decision 122 III 439 (447 f) also published in SRIEL 1998, p. 441 with a commentary by I. SCHWANDER; Federal Supreme Court Decision 135 III 623, with a commentary by I. SCHWANDER in AJP/PJA 1/2010, p. 110 ff; Federal Supreme Court judgment 4A_161/2008 (01.07.2008), already with a consideration on LugC of 2007; Supreme Court judgment 5A_544/2007 (04.02.2008); F. DASSER / M. FREY, Übergangsrechtliche Stolpersteine des revidierten Lugano-Übereinkommens, in: Jusletter 11 April 2011, margin no 18 ff.; Aargau Cantonal Supreme Court, 17.12.1999, SRIEL 2001, p. 224.

### 4.   Address of addressee unknown – Service by Public Notice

When the address of the addressee of service is unknown, the Hague Conventions do not apply (Art. 1 para. 2 Hague Service Convention; Art. 1 para. 1 1954 Hague Convention). Therefore, when an authority wishes to proceed with service by means of public notice in a foreign country, it is recommended in principle to follow diplomatic channels. In addition, as the obligation to grant assistance no longer follows from a convention, the state addressed is free to decide whether it cooperates or not.

---

[20]   See footnote 10

[21]   Revised version of the Convention of 16 September 1988 on jurisdiction and the enforcement of judgments in civil and commercial matters

[22]   See also Art. 27 no 2 LugC 1988 in conjunction with Art. 63 LugC

It should be noted here that the Swiss Civil Procedure Code permits the authorities to proceed with a public notice in Switzerland when the address of the addressee is unknown and cannot be ascertained despite making reasonable enquiries or when service is impossible (see Art. 141 CPC).

To the knowledge of the FOJ, the central cantonal authorities do not automatically refuse to proceed with publication in response to a request from a foreign authority when the address of the addressee is unknown, but prefer to investigate the matter. Furthermore, in general, the Swiss authorities do not reject requests that have not followed diplomatic channels, but which have followed a channel provided for by the Conventions.

In the opinion of the FOJ, a Swiss or a foreign authority may proceed with the publication of notices addressed to an indeterminate number of persons whose identities are unknown (notice to creditors, appeal for beneficiaries of a will) by addressing their request to their representation in the country of publication. The representation is then charged with arranging publication.

5.    **Agreement between the European Community and Switzerland relating to the Free Movement of Persons, Federal Act on the Free Movement of Lawyers and Assistance**

With the entry into force on 1 June 2002 of the Agreement between Switzerland on the one hand, and the European Community and its member states on the other relating to the free movement of persons (SR 0.142.112.681) and the Federal Act on the Free Movement of Lawyers (SR 935.61; Lawyers' Act), a lawyer domiciled in the territory of the European Union may, under certain conditions, represent clients in Switzerland. Against this background, several judicial authorities have asked the FOJ whether the new law permits them to effect service without using the assistance channels.

First of all, it should be noted that this legislation does not regulate questions of assistance. Furthermore, under Article 140 of the Swiss Civil Procedure Code, the court may instruct parties with domicile or registered office abroad to provide a domicile for service in Switzerland.

There are two different cases: either a party domiciled in Switzerland is represented in a Swiss court by a lawyer whose registered office is on EU territory, or both the party and his or her legal representative are domiciled on EU territory.

In the first case, the FOJ is of the opinion that the assistance channels do not have to be followed. Indeed, due to the fact that the party concerned by service is domiciled in Switzerland, service made to his or her lawyer (see Art. 137 CPC) has no effect abroad and consequently is not capable of undermining the sovereignty of the state in which the lawyer has his or her registered office. Postal service to the lawyer for the parties is, as a result, permissible in such a case.

In the second case, due to the fact that the party is domiciled abroad, service has legal effects abroad and is, as a result, capable of infringing on the sovereignty of the state involved. It is advisable, therefore, to follow the assistance channels. It should be recalled that there are bilateral agreements between Switzerland and the coun-

tries bordering it that permit direct correspondence between authorities (see I.C.2, p. 3).

## 6.      Domicile for service

Under Article 140 of the Swiss Civil Procedure Code, the court may instruct parties with domicile or registered office abroad to provide a domicile for service in Switzerland. This instruction should also include a reference to what happens if a domicile for service is not provided (see Art. 141 CPC: Public notice) and has legal effects, so notice of this should be served abroad via judicial assistance channels (see e.g. Federal Insurance Court ruling K 18/04 of 18 July 2006).

## 7.      Deadline compliance

Submissions to the Swiss authorities must be filed no later than the last day of the limitation period with the relevant authority (e.g. the court dealing with the case) or by handing over documents to Swiss Post, a diplomatic mission or consular office of Switzerland for forwarding to the court (see Art. 143 CPC). When setting the limitation period the relevant authority can, provided it has the discretion to do so, take account of particular circumstances in the state in which service is effected (e.g. poor or unreliable postal service; nearest Swiss representation is in another country).

| III. | OBTAINING EVIDENCE |
|------|--------------------|

## III.A.   Foreword

### 1.   Overview

In addition to requests for service of documents, which in practice account for two thirds of all applications, judicial assistance in civil proceedings also includes requests made in order to obtain evidence (letters of request). The object of such applications is for example to obtain statements from witnesses, the production of documents, or an expert opinion.

The 1954 Hague Convention deals with requests relating to obtaining evidence in Chapter II: "Letters of request". The Hague Evidence Convention is devoted exclusively to this subject. It makes provision for obtaining evidence by means of letters of request (Chapter I), on the one hand, and through diplomatic or consular officers and through commissioners (Chapter II), on the other.

### 2.   Cases in which procedures for assistance need not be followed

According to international law, each state is obliged to respect the territorial sovereignty of other states. The territorial sovereignty of a state can, however, occasionally come into conflict with the judicial jurisdiction of the court in another state. It is generally accepted that a party domiciled in one state may come under the jurisdiction of another state. In relation to obtaining evidence, taking account of the judicial jurisdiction of a foreign court has, depending on the scenario, the following consequences.

The act of a foreign judge or a person appointed by him or, as permitted under the common law system, of the representatives of the parties coming to Switzerland to carry out legal procedures *always* constitutes an official act that may only be carried out in accordance with the rules relating to judicial assistance. Failing to do so is regarded as a violation of Swiss sovereignty whether or not the persons affected by these legal procedures are willing to cooperate.

In cases where a foreign judge or a person appointed by him or her or the representatives of the parties in common law systems do not come to Switzerland, but require a party domiciled in Switzerland to provide evidence (for the limits see Federal Supreme Court Decision 114 IV 128[23]), to fill in a questionnaire, or to appear before a foreign court, the submission of a letter of request to the Swiss authorities is not necessarily required. Letters of request are therefore not necessary in the event that a refusal to cooperate leads only to consequences of a procedural nature (e.g. a factual claim of the other party is accepted as true or the loss of the right to prove the claim at a later stage). The party concerned is free to cooperate. The *service* of this type of invitation must, however, be carried out according to the proper procedure for judicial assistance.

---

[23]   For the somewhat controversial discussion of the practice of the Federal Supreme Court, see for example DOROTHEE SCHRAMM, Entwicklungen bei der Strafbarkeit von privaten Zeugenbefragungen in der Schweiz durch Anwälte für ausländische Verfahren, AJP 2006 p. 491 ff., additional comments on p. 494

Where non-compliance by a party to the proceedings leads to sanctions that are not of a procedural nature (e.g. the criminal offence of *contempt of court*) the procedure for judicial assistance must be followed and thus a letter of request is required. This is only the Swiss authorities may apply coercive measures on Swiss territory.

In the event that the person to whom the invitation is directed is *not a litigant*, but a *third party* (witness, expert), he or she may not be regarded as being subject to the judicial jurisdiction of the court involved. In such cases, the legal proceedings must be carried out according to the proper procedure for judicial assistance. The mere invitation to go abroad does not have to follow the procedure for judicial assistance, provided, however, that it is not accompanied by any kind of coercive measure or that such a measure will not automatically result in the event of a refusal.

### III.B.   The competent authorities and transmission procedures

### 1.      Hague Evidence Convention

#### 1.1   *Under Chapter I of the Hague Evidence Convention*

In Chapter I, which governs letters of request, Article 1 paragraph 1 of the Hague Evidence Convention provides that the judicial authority of a contracting state may request by letters of request the competent authority of another state to perform any judicial act. The FOJ is of the opinion that the application for judicial assistance must in fact be issued by an *authority* and not by a private person, such as a lawyer. This interpretation follows from the text of the Convention.[24] It also provides for the limitation of any possible abuse by those receiving a request to the extent that the authority in question may proceed to filter the evidence required according to its relevance to the case at issue. Swiss authorities may only refuse an application within the limits of Article 12 of the Hague Evidence Convention.

The request for judicial assistance is sent to the Central Authority of the state addressed (the receiving authority), where applicable, via the Central Authority of the requesting state.[25] The central cantonal authority of the place in which the request is executed is therefore the receiving authority when the application comes from a foreign country. Such applications may, however, be lodged with the FOJ, which will transfer them to the competent central cantonal authority.

Swiss applications are transferred to the Central Authority designated by the state addressed (see the Guide on Judicial Assistance) or directly to the executing authority if there is a bilateral agreement allowing direct communication between authorities (see I.C.2, p. 3).

In the event that an authority receives an application for the execution of which it is not competent, it is required under Article 6 of the Hague Evidence Convention to forward the application without delay to the competent authority.

---

[24]   In contrast to the Hague Service Convention, the Hague Evidence Convention does not mention "judicial officers".

[25]   In Switzerland, the following cantons require that requests be filed via the central cantonal authority: JU, NE, SZ (for all requesting authorities apart from courts) and ZH.

13-01431-scc    Doc 25    Filed 02/10/14    Entered 02/10/14 18:52:06    Main Document
Pg 72 of 85
III OBTAINING EVIDENCE                latest update January 2013

### 1.2    Under Chapter II Hague Evidence Convention

The requesting authority will generally be the authority dealing with the case in the requesting state. Under Article 17 of the Hague Evidence Convention, however, it is sometimes the parties or their representatives who file the request by attaching the relevant court decision relating to the appointment of a commissioner to take evidence.

As under Chapter I of the Hague Evidence Convention, the application for judicial assistance shall be sent to the Central Authority of the state addressed (receiving authority) if applicable via the Central Authority of the requesting state.[26] The central cantonal authority of the place in which the request is executed is therefore the receiving authority when the application comes from a foreign country. Such applications may, however, be lodged with the FOJ, which will transfer them to the competent central cantonal authority. Under Articles 15 to 17 of the Hague Evidence Convention, where FDJP authorisation is necessary, we recommend sending a copy of the application to the FOJ in order to accelerate the decision process (see III.C.1.2, p. 28).

Swiss applications are transferred to the (Central) Authority designated by the state addressed. The explanations provided by the contracting states should be referred to.

In the event that an authority receives an application for the execution of which it is not competent, it is required under Article 6 of the Hague Evidence Convention to forward the application without delay to the competent authority.

### 2.    1954 Hague Convention

Letters of request must be issued by a *judicial authority*, in the same way as stipulated in the Hague Evidence Convention.

The foreign judicial authority must send its application to the diplomatic representation of its nation in Switzerland. The diplomatic representation will send the application to the FOJ, which, in turn, will send it to the competent cantonal authority.

A Swiss request must be sent to the FOJ, which will send it to the competent Swiss diplomatic representation in the country of destination, which, in turn, will send it to the authority designated as being competent by the country of destination in accordance with Article 9 of the 1954 Hague Convention. For detailed information, see the Guide on Judicial Assistance.

### 3.    Absence of an agreement

Where there is no international agreement, Switzerland applies the 1954 Hague Convention to foreign requests and to Swiss requests to other countries (see Art. 11*a* para. 4 PILA).

Swiss requests, if there is not a contrary custom, follow diplomatic channels (see, II.D.2.2, p. 10). See also the Guide on Judicial Assistance.

---

[26] See footnote 25.

**4.      Other channels of transmission**

See II.D.4, p. 11.

**III.C.   Requirements for the Application**

**1.      Hague Evidence Convention**

*1.1     Application under Chapter I*

1.1.1   Form

The Hague Evidence Convention does not require the use of a standard form for the application. In order to avoid omitting any information in the application, it is, however, recommended to use the <u>example provided</u> on our website based on the model proposed by the Hague Conference on Private International Law.[27]

1.1.2   Contents (Art. 3 Hague Evidence Convention)

In accordance with Article 3 of the Hague Evidence Convention, the letter of request must specify the following:

- The requesting authority and, if possible, the requested authority;
- The names and addresses of the parties, and, if applicable, of their representatives;
- The nature and the purpose of the proceedings, and a summary of the case;
- The evidence to be obtained or other judicial act to be performed.

If appropriate, the letters of request shall also specify:

- The names and addresses of the persons to be questioned;
- The questions to be put to these persons, or a statement of the subject matter about which the persons are to be questioned;
- The documents or other property to be inspected;
- Any request for the evidence to be given on oath or affirmation and, if necessary, any special form to be used;
- Any special procedures required in accordance with Article 9 of the Hague Evidence Convention;
- Any additional indications based on the model available on the Internet following the model proposed by the Hague Conference on Private International Law (see the User's Guide 1970, p. 69 f.).

No legalisation or analogous formality is required.

1.1.3   Language and translations (Art. 4 Hague Evidence Convention)

Each contracting state must accept letters of request written in French or in English, or with an attached certified[28] translation in one of these languages, unless a reservation prevents it from doing so.

---

[27]   See Practical Handbook on the operation of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matter, Antwerp – Apeldoorn 1984 [hereinafter: Practical Handbook Hague Evidence Convention], p. 69 f.; see footnote 2.

[28]   This means certification that the translation is complete and correct.

Switzerland has issued a reservation in accordance with which the letters of request and their annexes must be written in German, French or Italian or translated into one of these languages, depending on where the request is executed.

For letters of request intended for a foreign country, please refer to the <u>Guide on Judicial Assistance</u>.

### 1.1.4   Execution

#### a.      *Applicable Law (Art. 9 Hague Evidence Convention)*

In general, the execution of a letter of request is carried out in accordance with the law of the requested authorities. In Switzerland this means the cantonal laws on the administration of justice and the Swiss Civil Procedure Code, in accordance with Article 122 of the Federal Constitution.

The requested court shall apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law for the execution of orders issued by authorities of its own country or of requests made by parties in internal proceedings (Art. 10 Hague Evidence Convention).

When the application of the law of the requesting state is requested (Art. 9 para. 2 Hague Evidence Convention), the request shall be met unless the form is incompatible with the law of the state addressed or if its application is not possible due to practical difficulties.

This means that affidavits, which should be provided with the witness' statements and which are often required in the US instead of an oath, can be approved without problem. It should be noted that the witness must consent to this. If the witness is unwilling, he or she cannot be forced to act.

*Cross-examination* may also be admissible. In such cases, however, the Swiss judge remains in control of the questioning and must intervene when he or she considers it necessary. It is in particular the judge's responsibility to inform the witness of the right to refuse to give evidence or of prohibitions to give evidence. The judge is also the only person authorised to use coercive measures against the witness.

When, on request of the requesting state, a special form is used, the said state must meet the expenses thereof (Art. 14 para. 2 Hague Evidence Convention).

#### b.      *Obtaining evidence via a person appointed by the authorities addressed (Art. 14 para. 3 Hague Evidence Convention)*

Authorities that receive but are not in a position to execute a letter of request may instruct an authorised person to do so. In particular, when a request is sent to countries with a system of common law, the requested court may be unable to execute the letter of request by itself because, according to its procedural rules, it is the parties' responsibility to gather the evidence.

In accordance with Article 14 paragraph 3 of the Hague Evidence Convention, the requested authorities may, in such a situation, authorise a qualified person to execute the letter of request if the requesting authority agrees. By giving its consent, the requesting authority declares itself willing to meet the ensuing costs (see III.C.1.1.4f, p. 26).

### c.    The right to refuse to testify / Banking secrecy

The person to be questioned or who is requested to produce documents may claim to be exempt or prohibited from providing evidence, either on the basis of the law of the state addressed, or of the law of the requesting state (Art. 11 Hague Evidence Convention).

It should be noted that Article 47 paragraph 5 of the Federal Act of 8 November 1934 on Banks and Savings Banks (SR 952.0) makes a reservation in favour of federal and cantonal provisions relating to the duty to inform the authority and to testify in court. Bankers, who are essentially required to cooperate, are subject to Article 166 paragraph 2 of the Swiss Code of Civil Procedure as confidants of professional secrets. They may refuse to cooperate if they can show credibly that the interest in protecting confidentiality outweighs the interest in establishing the truth (limited right of refusal). The judge in this case weighs up the interests and decides on a case-by-case basis if the disclosure duty outweighs professional confidentiality and if banking secrecy should be lifted.

### d.    Participation of the members of the court of the requesting authority (Art. 8 Hague Evidence Convention) and/or of the parties or of their representatives (Art. 7 Hague Evidence Convention)

If the requesting authority wishes that certain of its court officers witness the execution of a letter of request, it must ask the authority in charge of the execution for preliminary authorisation (Art. 8 together with Art. 35 para. 2 let. c Hague Evidence Convention; reservation by Switzerland). The parties and/or their representatives may also be present at the execution of the letter of request if they so desire (Art. 7 Hague Evidence Convention).

In our view, in such cases the foreign requesting authority and/or the parties and/or their representatives must be able to intervene if they so desire. The Swiss judge, however, remains the master of the proceedings and the only person authorised to take coercive measures against the person addressed by the letter of request. He may furthermore remind the witness of his or her right to refuse to give evidence or that he or she is forbidden to give evidence.

### e.    Grounds for refusal

The authorities addressed may only refuse a request in the following cases:

- Where the case is not civil or commercial in nature (see I.D, p. 4);
- If the application does not fulfil the formal requirements (Art. 3 Hague Evidence Convention) or was not sent with the required translation (Art. 4 Hague Evidence Convention). In this case, the requesting authority should first of all be asked to complete its application (Art. 5 Hague Evidence Convention);
- If the authenticity of the application is unclear (generally, the fact that the application has been sent through the proper channels is sufficient proof of its authenticity; see also the different agreements on the abolition of legalisation on foreign public documents that have been ratified by Switzerland; SR 0.172.030.3/.037.43);
- If the execution of the application is not within the jurisdiction of the courts (Art. 12 para. 1 let. a Hague Evidence Convention; e.g. in the event that an amount of money needs to be collected in Switzerland and that the parties themselves have to act by way of forcible execution);
- If the state addressed is of the opinion that the execution of the application is liable to violate its sovereignty (e.g. coercive measures ordered in support of for-

eign decisions that influence the proceedings) or its security (Art. 12 para. 1 let. b Hague Evidence Convention);

- If the requested form of execution of the application is contrary to the legislation of the state addressed (before finally refusing the application, the foreign country should be asked if the requesting court accepts the execution being carried out in the forms authorised by the laws of the state addressed; Art. 9 Hague Evidence Convention).

*f.   Costs*

It is not possible in principle to charge any costs for the services carried out to the requesting state (Art. 14 para. 1 Hague Evidence Convention). The state addressed, however, may claim the reimbursement of compensation paid to experts and interpreters, and of costs ensuing from the enforcement of a special procedure called for by the requesting state, in accordance with Article 9 paragraph 2 of the Hague Evidence Convention.

Once the authority addressed has authorised a person to initiate the obtaining of evidence according to Article 14 paragraph 3 of the Hague Evidence Convention (see III.C.1.1.4b, p. 24), and has obtained consent of the requesting authority after indicating the approximate amount of the costs, it has the right to charge the requesting authority for the costs engendered. The consent of the requesting authority implies an obligation to reimburse the costs that result from using the services of a third party. If the requesting authority does not give its consent, it will not be liable for these costs.

It is provided in Article 26 of the Hague Evidence Convention that each contracting state may, in the event that it is so liable in terms of its constitution, invite the requesting state to reimburse the execution costs of the letter of request, and in relation to the summons, the expenses due to the person who gives evidence and who makes a record of the judicial enquiries. When a state makes use of this provision, any other contracting state can invite this state to reimburse the aforementioned costs.

It should be emphasised that the aforementioned provision must be regarded as an exception. As a rule, the costs are settled as indicated above, in accordance with the provisions of Article 14 of the Hague Evidence Convention.

In relation to Switzerland, the special terms of Article 26 of the Hague Evidence Convention are not applicable, as there is no corresponding constitutional provision. In the event that another contracting state relies on Article 26 of the Hague Evidence Convention, it must first indicate its pertinent constitutional provision. Switzerland could, in this case, demand reciprocity.

### 1.1.5  Letter of request relating to "*pre-trial discovery*" proceedings

The Swiss Civil Procedure Code imposes an obligation to produce exhibits that are likely to be relevant to the case. Persons who are not party to the proceedings may be exempt from this obligation provided they can claim the total or limited right to refuse to give evidence (see Art. 160 ff. CPC). It is incumbent upon the judge to decide which documents need to be produced.

The states with common law legal system have a stage in the proceedings called "*pre-trial discovery*", which takes place after the commencement of the action but before the main hearing. According to the American "discovery" system, each party has the obligation to inform the opposing party of all information that is relevant to the

case, the concept of relevance being interpreted in the broadest sense. This stage of the proceedings is conducted largely without judicial intervention. The judge only intervenes if the parties fail to reach an agreement, in particular if one of the parties fails to collaborate. The judge may, in this case, use coercive measures.

For the majority of countries in Europe, including Switzerland, the relevance and the specification of the facts to be established in civil proceedings must meet very demanding requirements. This is why Article 23 of the Hague Evidence Convention makes it possible for contracting states to declare that they will not execute a letter of request filed by states governed by common law relating to a pre-trial discovery of documents. Switzerland, without completely excluding assistance in the context of a pre-trial discovery, reserves the right, according to the conditions established below, to refuse requests for assistance that have such proceedings as their objective.

Switzerland therefore executes applications by foreign countries for judicial assistance formulated in the framework of pre-trial discovery, but always requires *i*) that applications be sent to Switzerland by a competent foreign court and not directly by the parties concerned, and *ii*) that applications precisely describe the evidence required and the purpose for which it is requested. Requests that are formulated in general terms and require the opposing party to indicate the documents in his or her possession with the aim of obtaining information that bears no relation to the case or to attempt to discover evidence to substantiate a claim ("*fishing expeditions*") are rejected. In other words, this means that applications by foreign countries for judicial assistance relating to pre-trial discovery are dealt with in the same way as internal Swiss applications for the production of documents.

A direct and necessary relationship therefore needs to exist between the request and the proceedings pending abroad. The letter of request must prove to be sufficiently relevant on a factual level.

The request will be refused if a person is asked to indicate the exhibits relating to the case that are or were in his or her possession or care, or over which he or she has or had a power of disposal. The same holds true when a person is expected to submit any document other than those stated in the application for judicial assistance. The aim is to prevent the party who bears the burden of proof to shift his or her obligation to the opposing party, or even to a third party.

Such letters of request must not, however, damage the interests of the persons concerned that are worthy of protection. This provision, which is a general clause in itself[29], is intended to take the banking and professional secrecy that is characteristic of Swiss law into consideration, without however leading to an automatic refusal of applications for judicial assistance based on a pre-trial discovery procedure.

---

[29]  Article 156 CPC: Safeguarding legitimate interests, reads "The court shall take appropriate measures to ensure that taking evidence does not infringe the legitimate interests of any parties or third party, such as business secrets."

### 1.2   Request under Chapter II of the Hague Evidence Convention (Art. 15 to 22 Hague Evidence Convention)

#### 1.2.1   General

As mentioned above, in accordance with Article 271 paragraph 1 SCC, those persons who carry out activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official, are committing an offence (see I.B, p. 2). Thus, unless they have authorisation, foreign parties who proceed with the hearing of witnesses or obtaining evidence on their own initiative in Switzerland are liable to be punished (the ordinary preparation of a case[30] by a lawyer has, however, always been possible without authorisation). This situation presents certain disadvantages for countries, such as the United States, which consider that the parties have authority to obtain evidence.

The Hague Evidence Convention compensates for this disadvantage by providing in its Articles 15, 16 and 17 that diplomatic or consular officials and court-appointed commissioners may take procedural steps in preparation for a trial, subject to certain conditions (Art. 21 Hague Evidence Convention). In conformity with these provisions, Switzerland has made use of its right to issue a reservation in relation to this provision whereby the aforementioned persons need to obtain authorisation with the Federal Department of Justice and Police before executing procedural steps in preparation for a trial.

#### 1.2.2   Conditions laid down in Article 21 Hague Evidence Convention – Procedural safeguards

Article 21 of the Hague Evidence Convention imposes the following conditions:

- The consular representative or commissioner can take any evidence insofar as the procedural steps considered are compatible with the law of the state of execution and accord with the authorisation granted (for foreign applications relating to this issue, see III.C.1.2.3, p. 29). Under the same conditions, he may also examine a witness under oath or solemn declaration (Art. 21 let. a Hague Evidence Convention).
- With the exception of the cases in which the person specified by the procedural measure is a national of the state in which the proceedings have begun, any request to appear or to give evidence must be written in the language of the place where the evidence is taken or be accompanied by a translation into such language (Art. 21 let. b Hague Evidence Convention).
- The summons must indicate the fact that the person concerned may be assisted by his counsel, and that he is not obliged to appear or to participate in the evidence-taking. The person in question is therefore free not to cooperate at all or to interrupt the taking of evidence (Art. 21 let. c Hague Evidence Convention). The consular or diplomatic official or the commissioner may not take any coercive measures against the witness. Article 18 Hague Evidence Convention, however, provides that states may declare that foreign persons authorised to take evidence may apply to the competent authority to obtain the assistance required to carry out such acts by using coercive measures. Switzerland has made no declaration in relation to this subject, which makes it impossible to force the persons specified

---

[30] Obtaining of evidence taken into consideration in terms of the place of residence of the witnesses, etc.

by the procedural steps to collaborate in terms of Chapter II of Hague Evidence Convention. In the event of a refusal to collaborate, the only available procedure is the one provided for in Chapter I of the Hague Evidence Convention.

- In contrast to the proceedings under Chapter I of the Hague Evidence Convention, the evidence is to be taken, as a rule, according to the procedures provided for by the law of the requesting court. However, if the specified procedures are against the law of the state of execution, they may not be used.
- Cross-examination is also authorised, during which the witness is examined by the lawyers of both parties (Art. 21 let. d Hague Evidence Convention). For applications sent to Swiss authorities, see III.C.1.2.3, p. 29.
- The person to be heard may invoke, as in the context of a letter of request according to Chapter I of the Hague Evidence Convention, a privilege (Art. 21 let. e, together with Art. 11 Hague Evidence Convention).

### 1.2.3  Authorisation procedure before the Swiss authorities, and content of the application

In Switzerland, a foreign request for obtaining evidence is subject to prior authorisation by the FDJP (see the Swiss reservation in this respect as well as our <u>Fact sheet</u>, according to Articles 15 to 17 Hague Evidence Convention.

Foreign applications must, however, first be addressed to the Central Authority of the canton where evidence will be taken (see the Swiss reservation); they (and the enclosures) must be submitted in the official language of this canton. To speed up the procedure, we recommend you send a copy at the same time to the Federal Office of Justice FOJ, Private International Law Unit, 3003 Bern. After examining the request, the central cantonal authority forwards the application to the FOJ, indicating, if need be, whether it is opposed to granting the authorisation or if it would like the authorisation to have certain accompanying conditions. When the procedural conditions and safeguards according to Article 21 Hague Evidence Convention are met, the FDJP grants the authorisation. An advance of fees will, however, be necessary beforehand (Art. 5 and 13 of the Ordinance on Costs and Remuneration in Administrative Proceedings [SR 172.041.0]; CHF 100 to 5000).

If cross-examination is intended, there are two possible approaches. First, a sole commissioner can be appointed – for example, a neutral person – who will chair the taking of evidence and will see to it that the examination by the lawyers of the parties is conducted in accordance with Swiss law (no coercion, reminder of exemptions or any prohibition from giving evidence). In this case only one authorisation will be given. Second, it is also possible that each agent is appointed commissioner. In this case, authorisation will be granted to each person to conduct the examination.

The application for authorisation must:
- Briefly describe the nature and subject matter of the proceedings;
- Indicate the amount in controversy; this is necessary in order to fix the amount of the advance on procedural costs. The decision on the authorisation will be taken only after payment of the advance on procedural costs.
- Indicate the identity and the address (fax number, e-mail included) of the litigants;
- Indicate the identity and the address (fax number, e-mail included) of the counsels of the litigants;
- Indicate the form of, and the grounds for, the intended procedural formalities; it is recommended to describe in sufficient detail the modalities of the procedural formalities to insure that the authorisation will cover all the procedural formalities en-

visaged. If possible, the name and address of all participants in the procedural formalities should figure in the application;

- Indicate the name and address of the persons involved in the intended procedural formalities;
- Indicate the name and address of the person or persons who are to supervise the evidentiary proceedings if the application is one under Article 17 of the Hague Evidence Convention. Under Articles 15 and 16, on the other hand, all consular or diplomatic officials in the relevant embassy or consular agency will be given authorisation to supervise the taking of evidence;
- Propose a date for the intended taking of evidence. The request should be filed two months before the proposed date.

In addition, the application has to include a copy of the court decision appointing the commissioner.

Before sending the application, it is recommended that written confirmation is requested from prospective witnesses to the effect that they are cooperating of their own accord, that they know they cannot be subjected to any coercive measures, cannot be forced to participate or to appear and have the right to refuse to give evidence on the basis of privileges both under the law of the state addressed and of the state of origin (Art. 21 Hague Evidence Convention). In the event that the person concerned subsequently does not wish to cooperate, the entire procedure will have been unnecessary while having generated costs.

Finally, the application need not be made by the foreign court; it may be made by a party or its attorney. The application should then be accompanied by a power of attorney or by an authorisation of the foreign court. As mentioned, the application needs to be accompanied by the court decision appointing the commissioner.

The Federal Department of Justice and Police must serve the authorisation. In order for this service to be made in time it is suggested that the applicant designate a person in Switzerland who will accept service of the authorisation. In the absence of such an agent for service, the authorisation will have to be served through the channels of judicial cooperation, which unavoidably prolongs the proceedings.

### 1.2.4  Swiss applications to a foreign country or evidence taken by Swiss diplomatic or consular representatives

The FOJ refers to the declarations made by the contracting states on the Hague Evidence Convention. The explanations under III.C.1.2.2, p. 28 should be referred to for conditions and procedural safeguards laid down by Article 21 of the Hague Evidence Convention.

Generally speaking, the Swiss embassies and consulates (Swiss diplomatic or consular representatives) may take evidence in civil and commercial matters from Swiss citizens and other individuals they represent if the host country permits (Article 15 Hague Evidence Convention).

Evidence in civil and commercial matters may only be taken by a Swiss diplomatic officer or consular agent from host state's citizens or from citizens of other countries (Art. 16 Hague Evidence Convention) if the competent authorities of the host state have given their permission, unless the host state has declared that evidence may be taken without its prior permission.

The FOJ is willing to provide support and explanation of the procedures in the different countries. In order to ensure coordination with the Swiss diplomatic and consular representatives and that they are properly instructed, it is recommended that the FOJ is contacted in good time.

## 2.     1954 Hague Convention

### 2.1    Basis

Chapter II of the 1954 Hague Convention served as the basis for Chapter I of the Hague Evidence Convention, which is why only the differences between the two conventions will be dealt with below. For further information see III.C.1.1.1 - 1.1.4, p. 23 et seq.
Chapter II of the Hague Service Convention is new. There is no corresponding chapter in the 1954 Hague Convention. For the obtaining of evidence by private persons or by diplomatic officers and consular agents in the context of the 1954 Hague Convention, see III.C.2.7, p. 32.

### 2.2    Form and content

As in the case of the Hague Evidence Convention, no form is provided by the 1954 Hague Convention. Furthermore, the 1954 Hague Convention does not indicate what information is required for the application. We recommend using the model on our webpage for the Hague Evidence Convention based on the model used by the Hague Conference on Private International Law (see also Practical Handbook Evidence Convention 1970, p. 69 et seq.).

### 2.3    Language and translation

Requests for judicial assistance are in principle to be made in the language of the authority (i.e. the court) requested to execute them, or must be accompanied by a certified[31] translation in that language (Art. 10 1954 Hague Convention). Unless otherwise stated by a bilateral agreement (see I.C.2, p. 3), foreign applications must be in the language of the canton executing the request. Unlike Article 4 paragraph 3 of the Hague Evidence Convention, Article 10 of the 1954 Hague convention does not invite a contracting state which has more than one official language to specify by declaration the language in which the request or the translation thereof shall be expressed for execution in the specified part of its territory. Switzerland has thus made no declaration; Swiss authorities consequently receive from time to time letters written in one of the Swiss official languages, but not in the one of the place of execution. In such cases, the FOJ recommends executing the request nonetheless, if possible, and inviting the requesting authority to draw up its request in the official language of the place of execution in future. In the case of Swiss requests to a foreign country, please consult the Guide on Judicial Assistance.

---

[31] This means certification that the translation is complete and correct.

### 2.4   Applicable law

In accordance with Article 14 paragraph 1 of the 1954 Hague Convention, the authorities addressed apply their own law. When the requesting state calls for the request to be executed in accordance with its own law, its request will only be rejected if the required form is contrary to the legislation of the state addressed.

### 2.5   Grounds for refusal

These are the same as those indicated in the Hague Evidence Convention (see III.C.1.1.4e, p. 25).

### 2.6   Costs

As a rule, judicial assistance is free of charge. However, contrary to what is established by the Hague Evidence Convention, expenses paid to witnesses as well as costs due to the appearance of a witness can be charged. Furthermore, as in the Hague Evidence Convention, expenses paid to experts as well as costs resulting from the application of foreign law to execution are subject to reimbursement (Art. 16 para. 2 1954 Hague Convention; however, for Austria, see the supplementary agreement of 26 August 1968; SR 0.274.181.631, Art. 7 para. 2).

### 2.7   Obtaining evidence directly by the parties in Switzerland or the diplomatic officers or consular agents under the 1954 Hague Convention

#### 2.7.1   Activities carried out by the parties in Switzerland

The taking of evidence by a person appointed commissioner is one of the main innovations of the Hague Evidence Convention. The 1954 Hague Convention, on the other hand, does not authorise this. Consequently, Article 271 of the Swiss Criminal Code (SCC) remains fully applicable.[32]

Authorisations under Article 271 SCC are granted only in exceptional cases. Authorisation is not granted unless judicial cooperation is theoretically possible (i.e. when there is no ground for refusal) and in the event that it appears practically impossible, or even absurd, to require Switzerland's public authorities to assist in the matter (see Administrative Case Law of the Federal Authorities 1997 [61/82], p. 789 f.).[33]

#### 2.7.2   Activities carried out by diplomatic officers or consular agents

Article 15 of the 1954 Hague Convention authorises foreign requesting authorities to have their requests executed directly by diplomatic officers or consular agents in the state of execution if an agreement between the interested states expressly permits this or if the state in the territory where the letters of request are to be executed does not object. Switzerland has not entered into an agreement of this type and does not, as a general rule, permit diplomatic officers or consular agents to obtain evidence on its territory (ACLFA 1968-1969 [34/15], p. 31).

In those countries in which procedural actions are to be taken by the parties rather than by the court, the Swiss Embassies and Consulates may, with the consent of the

---

[32] See also I.B, p. 7
[33] For example, if a foreign court requests an on-site inspection.

host country, invite Swiss and foreign nationals to appear for questioning or may question those individuals in their homes. The diplomatic and consular officers of Switzerland must not, however, use coercive measures.

## 3.   Obtaining evidence in the absence of an agreement

In the absence of an agreement, the Swiss authorities apply the 1954 Hague Convention to foreign requests and to Swiss requests to other countries (see Art. 11*a* para. 4 PILA and also Art. 11*a* paras. 1 - 3 PILA).

As a general rule, requests must be translated.

For costs relating to foreign requests, see Article 16 of the 1954 Hague Convention. In relation to Swiss requests to other countries, for the countries where there is no agreement in relation to this matter the FOJ will request a guarantee from the Swiss authority that any costs that are charged will be reimbursed.[34]

In the absence of contrary practices or agreements, Swiss requests made to foreign countries follow diplomatic channels (see II.D.2.2, p. 10). For information on the position in specific countries, reference is made to the Guide on Judicial Assistance.

Switzerland does not generally permit diplomatic officers and consular agents to obtain evidence on its territory (ACLFA 1968-1969 [34/15], p. 31; see III.C.2.7.2, p. 32.

As reciprocity is usually required between countries without a mutual agreement, neither is it generally possible for Swiss diplomatic officers and consular agents to obtain evidence in another state.

## III.D.  Special Issues

## 1.   Hearing by video conference

The conduct of a hearing by a foreign authority or foreign lawyers by video conference of witnesses or parties who are physically[35] located in Switzerland constitutes an act by a public authority on Swiss territory, and as such is therefore illegal unless authorised.

Under the Hague Evidence Convention, several case scenarios can be envisaged.

First, the authorities and the agents for the parties may participate at a hearing of the party and/or third parties that is conducted by a Swiss judge (Art. 7 and 8 Hague Evidence Convention). Such participation is possible under the same conditions as when the authority and/or the agents for the parties are physically present in Switzerland (see III.C.1.1.4d, p. 25). In particular, the Swiss judge remains master of the proceedings and is the only person with the authority to order coercive measures.

---

[34]   The entry "Kostengutsprache nötig" in the Guide indicates that such a guarantee will need to be obtained.

[35]   Unlike the case where the parties are required to fill in a questionnaire, a hearing by video conference is interactive. The questions asked and the answers given are therefore to be regarded as a whole and consideration should be given to the location of the persons concerned (see Alexander R. Markus, Neue Entwicklungen bei der internationalen Rechtshilfe in Zivil- und Handelssachen, RSDA 2002, p. 65 et seq., who deals with the problem of hearings by video conference and by telephone).

One can equally imagine recourse to video conference techniques in terms of Chapter II of the Hague Evidence Convention. Authorisation is in this case subject to the same conditions as in the "traditional" cases of authorisation (see III.C.1.2, p. 28). However, the fact that the persons are not in the same location suggests that an identification procedure is required.

The costs related to a hearing by video conference can be charged to the requesting state (Art. 9 para. 2, Art. 14 para. 2 Hague Evidence Convention).

Outside of the framework of the Hague Evidence Convention, i.e. if the procedure takes place in a state that is not a party to that Convention, the FOJ is of the opinion that a hearing by video conference is not possible other than in exceptional circumstances. Firstly, the 1954 Hague Convention – which Switzerland not only applies in its relations with contracting states but also as automonous law in the absence of an agreement (see Art. 11*a* para. 4 PILA) – neither provides for the possibility of a foreign judge participating in the hearing nor for the possibility of consular or diplomatic agents or of a commissioner carrying out a hearing. Secondly, as authorisation in terms of Article 271 of the Swiss Penal Code is granted only in the event that the ordinary channels do not allow satisfactory results to be achieved, it is only possible to grant authorisation on this basis in cases that are highly exceptional.

## 2.      Hearing by Telephone

Under the Hague Evidence Convention, a hearing by telephone is conceivable under the same conditions as a hearing by video conference. However, the problem of identifying the parties is even more pronounced in the case of a telephone hearing than in the case of a video conference hearing. In addition, the formal aspect of a normal hearing, which encourages the witness to respond carefully to the questions asked, is lacking in the case of a telephone hearing.

latest update January 2013

## CONTACTS

If you have any questions, please contact:

- The Federal Office of Justice FOJ, Private International Law Unit, 3003 Bern, Tel.: 031 323 88 64; Fax: 031 322 78 64; E-mail: ipr@bj.admin.ch or
- The Federal Office of Justice, Division for International Legal Assistance, 3003 Bern, Tel.: 031 322 42 38; Fax: 031 322 53 80; E-mail: irh@bj.admin.ch.